# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

----------------------------------------------

### No. 97-2122

----------------------------------------------

D. C. Docket No. 96-79-CR-T-24B

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/13/98
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN WILSON, a.k.a. Clinton Edwards, a.k.a.
Kevin Edwards, a.k.a. Keevie,

Defendant-Appellant.

----------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

----------------------------------------------------------------

(August 13, 1998)

Before EDMONDSON and BARKETT, Circuit Judges, and ALARCON*, Senior
Circuit Judge.

_____

\* Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth
Circuit, sitting by designation.

**EDMONDSON, Circuit Judge:**

Defendant appeals his conviction claiming that prosecutorial misconduct warrants a new trial. While some of the prosecutor's conduct at trial was improper, we nonetheless conclude that a new trial is not justified. We affirm.

## Background

In 1995, the Drug Enforcement Agency (DEA) and local law enforcement agencies conducted "Operation Cookie" -- a multi-agency task force established to investigate large-scale drug activity. As part of the investigation, Deputy Leon Paige and a confidential informant negotiated a drug deal with Defendant Kevin Wilson. Defendant was supposed to sell 125 grams -- or

2

4.5 ounces -- of crack cocaine to Paige.  But, on the day of the transaction, Defendant had only one-half ounce of crack cocaine to sell.  Nonetheless, Paige purchased the amount of crack cocaine Defendant had at that time.[1]  Paige tape-recorded the transaction.  Photographic surveillance of the transaction also occurred.

Despite this sale of cocaine, Defendant was not immediately arrested.[2]  Defendant, however, was later arrested for the one-half ounce transaction and indicted on one count of distributing cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  The case proceeded to trial.  At the close of his case, Defendant moved for a mistrial for prosecutorial misconduct.  The district court denied

---

[1]Paige and Defendant agreed to meet the next day to conduct the larger 125-gram transaction.  This transaction, however, does not appear to have occurred.

[2]The DEA agent supervising the transaction stated that Defendant was not arrested so that the investigation could continue into Defendant's "organization" and activities.

**Defendant's motion.  The jury convicted Defendant on the sole count charged.  The district court sentenced Defendant to 236 months' imprisonment.  Defendant appeals.**

## Discussion

**I      Reversal of Conviction due to Instances of Prosecutorial Misconduct**

**Defendant argues that instances of prosecutorial misconduct necessitate a mistrial.  He specifically contends that, because he was indicted for the single sale of only a small amount of crack cocaine, the prosecutor improperly characterized him as a "major" drug dealer during the course of the trial.[3]  <u>See</u> <u>United States v. Blakey</u>,**

---

[3] Plaintiff cites us to these instances, among others, of misconduct:
    [DIRECT EXAMINATION OF DETECTIVE PAIGE BY MR. ROSENGART]

Q. Were you on that day working as part of any task force?
A. Yes.
Q. What was that task force?
A. Operation Cookie.
Q. What is Operation Cookie?
A. An operation involving multi-agents, Plant City Police Department, Tampa Police Department and the Drug Enforcement Agency as the supervising agency to investigate large-scale dealers of drugs, crack cocaine in particularly.
Q. Was the defendant targeted as part of Operation Cookie?

MR. WEISBROD [Defense Counsel]:  Your Honor, I would object to the relevance.

THE COURT:   Overruled.

A. Yes.

BY MR. ROSENGART:

Q. So in this Operation Cookie investigation in which the defendant was targeted, did you arrive at 1608 East 31st Avenue in Tampa?
A. Yes.

****** 

[CROSS EXAMINATION OF DEFENDANT]

Q. So isn't it true that you are, in fact, a major cocaine player?
A. No, sir.

****** 

[SIDEBAR DISCUSSION]

MR. ROSENGART: I've got these two 404(b) witnesses.

THE COURT: What are they going to testify?

***

MR. ROSENGART: Special Agent Paige will testify that he personally negotiated a multikilo transaction of crack cocaine with the defendant.  And I think the reason it's relevant is

5

**14 F.3d 1557, 1560-61 (11th Cir. 1994) (prosecutor must refrain from conduct, such as improper characterization of defendant, that is calculated to produce wrongful conviction); United States v. Goodwin, 492 F.2d 1141, 1147 (5th Cir. 1974); cf. United States v. Caballero, 712 F.2d 126, 132 (5th Cir. 1983) ("The offense charged is a major transaction, and the government committed no error in characterizing it as such.").  In addition, he asserts that the prosecutor made improper inquiries about**

the defendant testified that this wasn't him because he's a small-time player, but, in fact, he had negotiated a multikilo transaction with Special Agent Paige.

***

THE COURT: The [Defendant] has testified that he was just a small-gram dealer as opposed to a kilo dealer, and -- all right, we will do that.

******

[CLOSING ARGUMENT]

[Paige] told you that on January 26, 1995, as part of something called Operation Cookie, where major drug dealers are targeted, he, along with a confidential informant, arranged to do a drug deal with the defendant . . . .

***

So the defendant, himself, as a part of Operation Cookie, was a major crack cocaine dealer.

**his prior convictions.[4]  Defendant's argument, however, is**

_____

[4]Plaintiff cites us to these instances of misconduct:

[CROSS EXAMINATION BY MR. ROSENGART OF DEFENDANT]

Q.   [D]o you recall getting convicted in January of '96 of three separate convictions?

A.   Yes, sir.

Q.   One of those involved selling drugs to a DEA agent; isn't that right?

A.   Yes.

Q.   And you were convicted after the special agent testified that you held a gun to his head during a drug transaction; isn't that right?

A.   Yes, sir.

MR. WEISBROD: Excuse me, Your Honor.  These convictions were not drug convictions, and they were not in January of 1996, and Mr. Rosengart knows that.

MR. ROSENGART: The arrest was January of '96.

MR. WEISBROD: They were not drug convictions.

MR. ROSENGART: I didn't say they were drug convictions.

THE COURT: What do you mean, they?  Identify which were and which were not.

BY MR. ROSENGART:

Q.   You were arrested of assaulting a Drug Enforcement Administration special agent by holding a gun to his head; isn't that right?

MR. WEISBROD: Your Honor, I will object to the line of inquiry.  It's not the number of convictions.  It's the nature of convictions, going beyond that.

[The judge did not rule on the objection but, instead, conducted his own examination of the witness.  Mr. Rosengart then

7

**unavailing.** **To find prosecutorial misconduct, a two-element test must be met: "'(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'"** United States v. Gonzalez, **122 F.3d 1383, 1389 (11ᵗʰ Cir. 1997) (quoting** United States v. Eyster, **948 F.2d 1196, 1206 (11ᵗʰ Cir. 1991));** see also United States v. Thomas, **62 F.3d 1332, 1343 (11ᵗʰ Cir. 1995).** **"A defendant's substantial rights are prejudicially affected when a reasonable probability arises that,**

---

proceeded with his examination]

               \*\*\*

Q.   Didn't you have a deal with a DEA officer where you were going to sell him more than one kilo of crack cocaine?

A.   Yes, sir.

Q.   And you tried to rip off the money that he brought to that transaction, right?

A.   No.

Q.   You pulled a gun to his head; isn't that right?

A.   No, I didn't.

Q.   You didn't pull a gun to his head?

        MR. WEISBROD: Your Honor, I object.

        THE COURT: Sustained.

        MR. WEISBROD: And ask the jury to disregard the last question and answer.

        THE COURT: The jury will disregard the last question and answer.

8

but for the remarks, the outcome [of the trial] would be different."  United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995) (citing Kennedy v. Dugger, 933 F.2d 905, 914 (11th Cir. 1991)).  The court makes this determination in the "'context of the entire trial and in light of any curative instruction.'"  United States v. Chirinos, 112 F.3d 1089, 1098 (11th Cir. 1997) (quoting United States v. Beasley, 72 F.3d 1518, 1525 (11th Cir. 1996)); Thomas, 62 F.3d at 1343 (curative instruction may render prejudicial remark harmless).

In this case, some of the pertinent remarks of the prosecutor were improper.[5]  And, at least about some of the

_____

[5]We note that **Defendant failed to object to several of the remarks at trial.  Such a failure to object typically will cause this court to review the misconduct only for plain error. See United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997); United States v. Smith, 918 F.2d 1551, 1563 (11th Cir. 1990); United States v. Russell, 703 F.2d 1243, 1248 (11th Cir. 1983). Nonetheless, we are mindful of a defense counsel's dilemma: Objections may also serve to draw unwanted and unnecessary attention to the prejudicial -- albeit improper -- conduct.  See United States v. Garza, 608 F.2d 659, 666 (5th Cir. 1979) ("[W]hile defense counsel could and, indeed, should have objected to the**

**remarks, the government's counsel conceded as much in the**

**briefs and at oral argument.[6]  The sole issue, then, is whether**

_____

**first instances of improper comment by the prosecutor, at some point the transgressions of this prosecutor cumulated so greatly as to be incurable; then objection to these extremely prejudicial comments would serve only to focus the jury's attention on them."); <u>United States v. Sawyer</u>, 347 F.2d 372, 374 (4th Cir. 1965) ("While ordinarily, if defense counsel does not object [to misconduct] he may be said to have waived the point, there may be instances where the failure to object to a grave violation manifestly stems from the attorney's fear that an objection will only focus attention on an aspect of the case unfairly prejudicial to his client."); <u>see</u> <u>also</u> <u>McKinney v. Estelle</u>, 657 F.2d 740, 743 (5th Cir. 1981) ("continued improprieties on the part of the prosecution may, in some circumstances, excuse the defense of its duty to object").**

**In this case, while defense counsel may not have objected to each instance of misconduct he now challenges, we recognize that he did object to many of the instances of misconduct before us here.  In the light of these objections, we assume that defense counsel objected sufficiently so as to permit our standard review of prosecutorial misconduct (as opposed to the strict plain error standard).**

[6]The government's brief says, in pertinent part, these words: "Although the prosecutor should not have questioned [Defendant] about the facts underlying th[e] conviction, [Defendant] is entitled to no relief because the district court's instructions to the jury mitigated any prejudice and there was overwhelming evidence of [Defendant's] guilt."

And, at oral argument, the government's counsel said, in pertinent part, these words: "And we concede it was inappropriate for [the

the remarks substantially affected Defendant's rights. We conclude that Defendant has shown no substantial prejudice.

The record reveals that the district court made an effort to cure any prejudice that may have resulted from the prosecutor's remarks. In at least one instance, the district court sustained an objection by Defendant and issued immediately a curative instruction to the jury to disregard the improper remark. See Gonzalez, 122 F.3d at 1389 (no substantial prejudice because the district court sustained objections and issued a curative instruction). In addition, the district court gave several instructions to the jury throughout the trial about how evidence or statements made by the lawyers should be used and considered.[7] See United States v. Bailey,

---

prosecutor] to state that 'Isn't it true that during that drug transaction in 1996, you held a gun to the special agent's head?'"

[7]For example, the district court instructed the jury about the limited purpose for which evidence of prior convictions could be considered. The district court also instructed the jury that statements made by the lawyers during opening and closing arguments are not evidence and

123 F.3d 1381, 1402 (11th Cir. 1997).  The jury is presumed to have followed these instructions.  <u>See</u> <u>United States v. Calderon</u>, 127 F.3d 1314, 1334 (11th Cir. 1997).

Most important, evidence of Defendant's guilt is overwhelming.  <u>See</u> <u>generally</u> <u>United States v. McClean</u>, 138 F.3d 1398, 1403 (11th Cir. 1998) (Despite prosecutorial misconduct, "[defendant] cannot show prejudice in the face of the overwhelming evidence of his guilt."); <u>United States v. Gonzalez</u>, 833 F.2d 1464, 1466 (11th Cir. 1987) (no substantial prejudice where evidence of guilt was overwhelming); <u>United States v. Modica</u>, 663 F.2d 1173, 1182 (2nd Cir. 1981) (same); <u>cf.</u> <u>Blakey</u>, 14 F.3d at 1561 (substantial prejudice shown where evidence "was not overwhelming"). The government presented this evidence: (1) Deputy Paige's direct testimony about purchasing the cocaine from Defendant; (2)  evidence of the

---

could not be used or considered in making the determination of Defendant's guilt or innocence.

crack cocaine; (3) a tape recording of Paige, the confidential informant, and Defendant during the drug transaction;[8] and (4) Defendant's own testimony, which seems to corroborate the evidence to some extent.[9]

We conclude that the prosecutor's remarks, although improper, did not affect Defendant's substantial rights and did not deprive him of a fair trial. The district court committed no error by denying the motion for mistrial; and no new trial is warranted. See United States v. Melton, 739 F.2d 576, 579 (11th Cir. 1984); see also United States v. Dodd, 111 F.3d 867, 870 (11th Cir. 1997).

---

[8]Defendant argued that the tape recording should not be considered evidence of his guilt because it is "practically" unintelligible. We have reviewed the tape. And, while we agree that the conversation on the tape is difficult to understand, it is not incomprehensible.

[9]For example, it is significant that, by testifying, Defendant permitted the jury to hear his voice. As a result, the jury members were able to make an independent evaluation about whether or not it was, in fact, Defendant's voice on the tape.

**II    Alternative Sanctions for Instances of Prosecutorial Misconduct**

We thus find ourselves in a situation with which we are all too familiar: a prosecutor has engaged in misconduct at trial, but no reversible error has been shown.  See United States v. Boyd, 131 F.3d 951, 955 (11ᵗʰ Cir. 1997); see United States v. Eason, 920 F.2d 731, 736 (11ᵗʰ Cir. 1990) (citing cases in which the court has affirmed convictions despite prosecutorial misconduct); United States v. Butera, 677 F.2d 1376, 1383 (11ᵗʰ Cir. 1982); see also Modica, 663 F.2d at 1182.

We recall the duties in a criminal prosecution of a lawyer for the United States:

> "A United States district attorney carries a double burden.  He owes an obligation to the government, just as any attorney owes an obligation to his client, to conduct his case zealously.  But he must remember also that he is

the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the foundation: better the guilty escape than the innocent suffer."

Dunn v. United States, 307 F.2d 883, 885 (5th Cir. 1962) (quoting Handford v. United States, 249 F.2d 295, 296 (5th Cir. 1957)); see Goodwin, 492 F.2d at 1147 ("[Prosecutor] is at liberty to strike hard blows, but not foul ones.").

And, as this court said in Hall, "government counsel is, as an individual, properly and highly respected by the members of the jury for his integrity, fairness, and impartiality." 419 F.2d at 588 (internal quotations and citation omitted).

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which

15

so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."

Added to this is the unseen presence in the courtroom of our great and powerful government with its counsel and its voice in the person of the United States Attorney. For all these reasons his power to persuade is great. And for these reasons he must speak with the care, the decorum and the sensitivity that befit his position and his duties. Neither the heat and strain of trial nor the right to strike hard blows authorizes him to do otherwise.

Id. (quoting Berger v. United States, 55 S.Ct. 629, 633 (1934)). Not only must a prosecutor be faithful to his duties each time he enters a courtroom, he must also be mindful of

the authority he wields when executing those duties before a jury.

One may think that unless a conviction is reversed, no error has occurred. Such a proposition is incorrect. "That we find an error not to be reversible does not transmute that error into a virtue. The error is still an error. [And, u]rging the error upon the trial court still violates the United States Attorney's obligation to the court and to the public." Eason, 920 F.2d at 737; see Boyd, 131 F.3d at 955 ("The fact that we do not reverse the convictions in these cases does not mean that we condone [improper] remarks of this kind."). But the reversal on appeal of a conviction is usually an inappropriate method by which to deter or to correct prosecutorial misconduct. See Modica, 663 F.2d at 1183-84; see generally United States v. Isgro, 974 F.2d 1091, 1099 (9th Cir. 1992) (dismissing indictment due to misconduct would provide an unwarranted "windfall" to the defendants).

On the matter of professional misconduct of prosecutors, the realities require that we defer to our colleagues on the district courts to take the lead. District courts are in a better position to ensure that a prosecutor properly fulfills the duties and obligations of his office. <u>Modica</u>, 663 F.2d at 1184-85. The district judge is in a better position to view the pertinent conduct -- for example, the tone and demeanor of the prosecutor. And the district judge will almost surely have more information -- for example, discussions off the record -- available to him when making decisions about dealing with such conduct. Also, as we have already mentioned, "[t]he district judge is in [the best] position to control the overall tenor of the trial. He can order the offending statements to cease and can instruct the jury in such a manner as to erase the taint of improper remarks that are made." <u>Id.</u>; <u>see</u> <u>Thomas</u>, 62 F.3d at 1343 (curative instruction may render prejudicial remark harmless). Furthermore, where a prosecutor's transgressions

are excessive, "'the trial judge has an obligation in the interests of fairness and justice to stop the prosecutor delivering a greatly prejudicial argument <u>sua</u> <u>sponte</u>.'"  <u>Garza</u>, 608 F.2d at 666 n.7 (quoting <u>United States v. Corona</u>, 551 F.2d 1386, 1391 n.5 (5th Cir. 1977)).

But, aside from these corrective measures, district courts must also consider "more direct sanctions to deter prosecutorial misconduct."  <u>Butera</u>, 677 F.2d at 1383 (citing <u>Modica</u>, 663 F.2d at 1182-86).  The district courts have many potential remedies available: (1) contempt citations; (2) fines; (3) reprimands; (4) suspension from the court's bar; (5) removal or disqualification from office; and (6) recommendations to bar associations to take disciplinary action.  <u>See</u> <u>generally</u> Bennett L. Gershman, <u>Prosecutorial Misconduct</u> Ch. 13 (1997).  "We encourage the district courts in this circuit to remain vigilant . . . and consider more [fully these sanctions] in cases of persistent or flagrant misconduct."  <u>Butera</u>, 677 F.2d at 1383.

We do not say that the prosecutor's words in this case warranted more action than what was taken by the district court. We know that the trial of a criminal case is not a dainty affair. And, this case is by no means the worst we have seen from prosecutors. Also, we do recognize that most prosecutors in most trials act completely consistently with their professional obligations.

But, we want to make clear that improper remarks and conduct in the future, especially if persistent, ought to result in direct sanctions against an offending prosecutor <u>individually</u>. "We expect the able attorneys who supervise federal prosecutors throughout this Circuit to renew their efforts to maintain the high level of conduct that has traditionally characterized the office of the United States Attorney." <u>Modica</u>, 663 F.2d at 1186. And prosecutors must expect that this court will support district judges who take reasonable steps to correct prosecutorial conduct that is not right.

**AFFIRMED.**