[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14797
Non-Argument Calendar

_____

D. C. Docket No. 05-20776-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARKEEM WILTSHIRE,
a.k.a. Arkeem Daniel,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 19, 2007)**

Before TJOFLAT, ANDERSON and BARKETT, Circuit Judges.

PER CURIAM:

A Southern District of Florida jury found appellant guilty of four offenses

committed between September 1 and 15, 2002: Count 1, conspiracy to import cocaine, in violation of 21 U.S.C. § 963; Count 2, conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846; Count 3, importation of cocaine, in violation of 21 U.S.C. § 952(a); and Count 4, possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court determined that the Guidelines called for prison terms in the 168-210 months' range and sentenced appellant to concurrent prison terms of 180 months. He now appeals his convictions and sentences.

The evidence adduced at appellant's trial revealed the following smuggling scheme and appellant's participation in it. For some time prior to the September 1-15, 2002 period indicated in the indictment, Edwin Murphy recruited "passengers" to go aboard cruise ships headed for the Carribean Islands. The passengers were to pick up cocaine after disembarking at a designated island and bring it back to the ship. There, a member of the crew would take custody of the cocaine and stow it until the ship stopped at Key West, Florida, where other "passengers," whom Murphy had recruited, would bring the cocaine to shore. In the case at hand, Murphy recruited appellant and Ashley Thornton as passengers for one of these cruises. They boarded a cruise ship at Port Canaveral, Florida, and when the ship arrived at Saint Maarten, they disembarked and rendezvoused with the cocaine

source.  The source gave them 13.63 kilograms of cocaine, which they brought back to the ship – thereby completing their assignment.  When the ship subsequently docked at Key West, Richard Fontenot, a Murphy recruit, who had boarded the ship at Port Canaveral, Florida, thus replacing appellant and Thornton in the smuggling venture, brought the cocaine ashore and was arrested.

Appellant seeks the reversal of his convictions and a new trial on the following grounds: (1) the district court erred in denying his motion to suppress statements he gave Immigration and Customs Enforcement agents following his arrest on November 28, 2005; (2) the prosecutor's examination of witnesses (participants in Murphy's smuggling scheme) about their plea agreements with the Government essentially vouched for the witnesses and denied appellant a fair trial; and (3) the court's comments during the trial denied appellant a fair trial.  We consider these grounds in order, find no merit in any of them, and accordingly affirm appellant's convictions.

## I.

The court properly denied appellant's motion to suppress on the basis of the magistrate judge's thoroughgoing recommendation contained in his Report and Recommendation of May 10, 2006.

## II.

Appellant contends that he was denied a fair trial because the prosecutor engaged in misconduct by: (1) effectively vouching for witness Ashley Thornton by generating sympathy for her; (2) vouching for other witnesses; (3) inferentially criticizing him for exercising his right to trial through questioning other co-conspirators; (4) inviting one witness to testify about his involvement in other crimes which had nothing to do with him; and (5) causing one witness to infer that he was dangerous. According to appellant, the cumulative effect of the above conduct was to prejudice him before the jury.

Regarding Thornton, he says the prosecutor, in questioning her, should not have brought out that she had a daughter, pled guilty knowing there was a ten-year minimum mandatory sentence, and cooperated with the Government. In addition to this, he points out that the prosecutor's questions prompted a second witness to testify that he pled guilty because he was guilty, was held accountable for all of the drugs alleged in his indictment, and that he qualified for safety valve relief. The prosecutor also prompted a third witness to testify that he was held accountable for all of the drugs he smuggled into Key West, and then got Edwin Murphy to testify that he pled guilty – because he was guilty and he hoped to receive a sentence reduction for testifying – and had engaged in other criminal activity for which he was not prosecuted. In appellant's view, these comments cumulatively had the

effect of criticizing appellant for exercising his right to trial.

Because the matter of prosecutorial misconduct involves mixed questions of law and fact, we normally review these claims de novo. United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997). However, the failure to object to statements during trial "typically will cause this court to review the misconduct only for plain error." United States v. Wilson, 149 F.3d 1298, 1302 n.5 (11th Cir. 1998). Since appellant did not object to any prosecutorial conduct that he now considers vouching, we review the conduct for plain error. See United States v. Cano, 289 F.3d 1354, 1363-64 (holding that where an appellant failed to object based on the ground which was raised on appeal, the appeal is reviewed for plain error).

When evaluating claims of prosecutorial misconduct, we examine the context of the entire trial, including any curative instructions that were given, to determine whether the prosecutor's statements (1) were improper, and (2) prejudicially affected the substantial rights of the defendant. Wilson, 149 F.3d at 1301. It normally is considered improper to bolster a witness by vouching for his credibility. United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). Vouching for a witness becomes improper if (1) the "jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility," placing the government's prestige behind the witness, or (2) the government alludes to

evidence not in the record to support the witness's testimony.  Id.  Improper vouching will result in prosecutorial misconduct if it affects the defendant's substantial rights.  Id. at 1206-07.  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would be different."  Wilson, 149 F.3d at 1301 (internal quotations and citation omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Eyster, 948 F.2d at 1207.  Even if a prosecutor's remark is prejudicial, a curative instruction may render the remark harmless.  United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997).  Prosecutorial misconduct, therefore, will be the basis for reversal only if, in light of the entire trial and any curative instructions, the misconduct prejudicially affected the defendant's substantial rights.  United States v. Hasner, 340 F.3d 1261, 1275 (11th Cir. 2003).

A prosecutor is permitted to bring up questions relating to a guilty plea where a co-defendant takes the witness stand.  United States v. Griffin, 778 F.2d 707, 710 n.5 (11th Cir. 1985).  Where a prosecutor questions witnesses regarding the truth-telling portions of their plea agreement or brings out the fact that the agreements stated they were subject to perjury, the prosecutor is not vouching.  Cano 289 F.3d at 1365-66.  It is also "proper for the prosecution to rehabilitate the

witness on direct examination if defense counsel attacks the witness' credibility during opening statement." Id. at 1366.

In this case, we are satisfied that no vouching occurred. First, the prosecutor was permitted to ask all codefendants about their guilty pleas because they took the witness stand. Griffin, 778 F.2d at 710 n.5. Moreover, the prosecutor was permitted to ask questions about perjury because we have explicitly stated that is not vouching. Cano, 289 F.3d at 1365-66.

Appellant attacked Murphy and Thornton's credibility, bringing in evidence of Murphy's other criminal activity in doing so, during his opening statement to the jury. The prosecutor was permitted to rehabilitate those witnesses. Cano, 289 F.3d at 1366. Accordingly, all the questions appellant complains of were permitted. At no time did the prosecutor indicate a personal belief in the witnesses' credibility, place the Government's prestige behind a witness, or allude to evidence not in the record.

The only remaining claims of prosecutorial misconduct are that the codefendants' statements about their guilty pleas implicitly criticized appellant for going to trial, and that Thornton's testimony made him look dangerous. The record contradicts the latter contention because Thornton stated that she felt comfortable with appellant, and her fear was the result of a third party's comment.

As for the former contention, the prosecutor was permitted to question all codefendants about their guilty pleas. Griffin, 778 F.2d at 710 n.5. Appellant did not object. His claim that this amounted to an implicit criticism of his choice to go to trial, in the face of the fact that the prosecutor was permitted to ask the questions, does not amount to error, much less plain error.

III.

Appellant contends that the judge inappropriately injected himself into trial in such a fashion as to create the impression of dislike or disbelief in the appellant, and partiality toward the Government. He points to the following events that took place in the presence of the jury: (1) at one point, the court interrupted a cross-examination to note that the question had been asked and answered and instructed the attorney to move on to the next question; (2) a couple of minutes later, the court told the attorney that the question was not relevant and to move on; (3) the court remonstrated defense counsel by telling him that when the court sustains something, "it didn't happen," and added a curative instruction to the jury, without request from the prosecutor; (4) the court refused to admit a Government exhibit tendered by defense counsel, telling him that it was not really his turn to offer evidence; (5) the court told defense counsel about the difference between Government and defense exhibits; (6) the court belittled defense counsel because

of an inartful question; (7) the court told counsel to "move on" when counsel asked if he could be heard on a Government objection; (8) the court chastised defense counsel by stating "if I have already ruled, what in the world makes you think you can ask it by using different words?  Sustained. . . don't ask it in a different way, either"; (9) the court told the attorney to move on to another question, and that details are not relevant; (10) the court called a sidebar conference when defense counsel would not stop asking the question for which he had been remonstrated, and told counsel that the next time he did it, he was going to be fined; and (11) the court stated that the jurors were not suffering from Alzheimer's.  According to appellant, the combined events were sufficient to prejudice the jury.

We "will not reverse a conviction unless the comments of the Trial Judge are so prejudicial as to amount to a denial of a fair trial." United States v. Morales, 868 F.2d 1562, 1576 (11th Cir. 1989) (quoting United States v. Preston, 608 F.2d 626, 636 (5th Cir. 1979).  "Furthermore, a clear effect on the jury is required to reverse for comment by the trial judge." Id. (citations and internal quotations omitted).  There are three factors that weigh in favor of finding that the comments of a trial judge are not reversible error.  These factors are: "(1) the comments 'occupied but a few seconds of a lengthy trial;' (2) the comments 'were directed to the defense counsel rather than to the jury;' and (3) the Trial Judge advised the jury

9

to disregard any intimation by the court relating to the facts of the case.  Preston,

608 F.2d at 636 (quoting United States v. Onori, 535 F.2d 938, 944 (5th Cir. 1976).

Here, all of the comments identified were very short.  Moreover, as the

Government correctly points out, not all of them were directed at defense counsel.

Rather, the judge's comments regarding moving on and Alzheimer's were directed

at the prosecutor.  Moreover, all of the judge's comments were directed at the

attorneys and never at the jury.  Additionally, this was a four-day trial.  Over the

course of four days, the comments complained of only took up a few moments.

Finally, the judge advised the jury, both during opening statement and after closing

arguments, that the court had no opinion on the case and that the jury should

disregard everything it said except for the instructions on the law.

\* \* \* \* \*

Appellant contends that his sentences should be vacated and the case

remanded for a new sentencing hearing on the grounds that the court erred in not

properly considering the sentencing factors of 18 U.S.C. § 3553(a) and in not

articulating the reasons for appellant's sentences.  Appellant's contention is

contradicted by the record.  The court explicitly stated that it had considered all of

appellant's stated arguments, the advisory sentence range prescribed by the

Guidelines, and the § 3553(a) sentencing factors.  As for those, the court stated that

10

it chose the sentences it gave for purposes of punishment and deterrence, two of the § 3553(a) factors. We therefore find no basis for setting aside appellant's sentences and remanding the case for resentencing.

AFFIRMED.