[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 27, 2009
THOMAS K. KAHN
CLERK

No. 08-14361
Non-Argument Calendar

_____

D. C. Docket No. 07-20913-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL MAYS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 27, 2009)

Before BARKETT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Michael Mays appeals his conviction for possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1). Mays contends that the district court abused its discretion in denying his motion for mistrial. Specifically, he alleges that: (1) a government witness's reference to an anonymous tip violated the pre-trial stipulation between Mays and the government, as well as Mays's rights under the Confrontation Clause; (2) the district court improperly refused to give the jury instruction he requested; and (3) several of the statements and questions from the prosecutor constituted prosecutorial misconduct.

## I.      Witness Testimony Regarding the Anonymous Tip

On appeal, Mays argues that the government improperly presented testimony from Detective Hugh Oliphant about receiving an anonymous tip that Mays was carrying a firearm. Mays argues that such testimony violated a pre-trial stipulation between himself and the government and violates his Confrontation Clause rights under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

We review de novo the scope of constitutional rights. United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005). However, we review the denial of a motion for a mistrial for abuse of discretion. United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005). That standard recognizes that there is a range of choice for the district court and, so long as its decision does not amount to "a clear

2

error of judgment," we will not disturb the decision, even if we would have chosen differently. McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001). Errors will not affect the substantial rights of a defendant so long as "properly admitted evidence sufficiently established" his guilt. Ramirez, 426 F.3d at 1353 (citation omitted). The harmless error doctrine applies to violations of the Confrontation Clause. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

In this case, the district court did not abuse its discretion by denying Mays's motion for a mistrial because, even if an error occurred, "properly admitted evidence sufficiently established" his guilt. See Ramirez, 426 F.3d at 1353. Furthermore, Mays's rights, pursuant to the Confrontation Clause, were not violated when Oliphant mentioned in his testimony that he had heard that Mays was carrying a firearm. Oliphant's statement does not constitute hearsay because it was not offered for the truth of the matter asserted. See Fed. R. Evid. 801(c). Moreover, the government did not need to use this statement for the truth of the matter asserted because Mays readily admitted that he possessed a firearm. Thus, the Confrontation Clause did not bar the admission of this statement. See Crawford, 541 U.S. at 59 n.9, 124 S.Ct. at 1369 n.9 (holding that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than

3

establishing the truth of the matter asserted").  The district court did not abuse its discretion in denying Mays's motion for a mistrial.

## II.    Jury Instruction

We review the legal correctness of a jury instruction de novo, but defer to the district court on questions of phrasing absent an abuse of discretion.  United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000).  Although we have promulgated pattern jury instructions, the district court is not required to give them.  See United States v. Fallen, 256 F.3d 1082, 1090 (11th Cir. 2001) (holding that the district court did not abuse its discretion when it refused to give a pattern jury instruction, and the given instruction correctly stated the law).  To prevail on a challenge of the district court's jury instructions, a defendant must show that the court "failed to give an instruction that was (1) correct; (2) not substantially covered by other instructions that were given; and (3) so vital that failure to give the requested instruction seriously impaired the defendant's ability to defend himself."  Id. (internal quotations and citation omitted).  In deciding whether the defendant's requested instruction was substantially covered by the actual charge delivered to the jury, we "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law."  United States v. Gonzalez, 975 F.2d 1514, 1517 (11th Cir. 1992).

A defendant must show four elements to establish the justification defense in the § 922(g)(1) context, which Mays sought to interpose: "(1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm." United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000).

The district court did not abuse its discretion by refusing to give Mays's requested instruction. First, Mays's theory of an affirmative defense was substantially covered by the court's charge to the jury. The court's instruction regarding justification was legally correct, as the court followed the standard set forth in Deleveaux. The substance of the pattern instruction and the given instruction, moreover, was nearly identical. The court's charge to the jury explained the four elements that Mays needed to prove, pursuant to Deleveaux, to establish his justification defense. Accordingly, the court did not abuse its discretion in refusing to give Mays the instruction as requested.

5

### III. Prosecutorial Misconduct

Mays argues that the government committed a series of improper acts that require that his conviction be vacated and that he be granted a new trial. We address each alleged instance of misconduct in turn.

We evaluate claims of prosecutorial misconduct de novo and examine the context of the entire trial, including any curative instructions that were given, to determine whether the prosecutor's statements (1) were improper, and (2) prejudicially affected the substantial rights of the defendant. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998) (internal quotations and citation omitted). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would be different." Id. (internal parenthesis omitted). "A jury is presumed to follow the instructions given to it by the district judge." Ramirez, 426 F.3d at 1352. Reversal is only warranted where the government's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of trial." United States v. Thomas, 8 F.3d 1552, 1561 (11th Cir. 1993).

First, Mays contends that the government violated its pretrial agreement not to raise the anonymous tip that Mays was in possession of a gun. The district court did not err in finding that the government had not violated the pretrial stipulation.

6

The government did not inquire or mention the tip; rather, it was Detective Oliphant who brought up the tip of his own accord in his answer to the government's question of what happened "after [he] advised [Mays] why [he] was there." In any event, any error was harmless because Mays did not dispute that he possessed the gun, and there was ample evidence that Mays possessed the gun.

Second, Mays contends that the government's comments (1) during opening statements, that it was the job of defense counsel to "distract" the jury; and (2) during closing argument, after pointing out inconsistencies in Mays's testimony, stating "you know how far we believe his testimony" were erroneous. The district court sustained defense counsel's objections to both statements and instructed the jury prior to opening statements and again before closing arguments that the arguments of counsel were not evidence. These jury instructions cured any prejudice from these two isolated and brief statements.

Third, Mays contends that the government acted improperly by attempting to impeach him by using his testimony to establish that the police officers arrived at 11:00 a.m., even though the police report indicated that they were dispatched at 11:45 a.m. and therefore could not have arrived until after that time. Even if this were error, it was an isolated and harmless one because, on cross-examination, Detective Oliphant conceded that he and Special Agent Murr arrived at

7

approximately 11:45 a.m., not "about 11:30" as he had earlier testified and, on redirect examination, Mays testified that it could have been 11:45 a.m. or later when the police arrived.

Fourth, Mays argues that Special Agent Murr's statement that his job with the ATF involved working with the Miami-Dade Police Department "to help reduce the gun crime that's in the North Side District" raised an "improper inference." Mays, however, does not explain why that description was improper. Special Agent Murr's statement is nothing more than a mere explanation of the scope of his job responsibilities. Moreover, given that Mays questioned both Special Agent Murr and Detective Oliphant about the high level of crime and violence in Liberty City, to bolster his claim that he carried the gun under duress due to the threat against his life, it is unclear how Mays's substantially rights were prejudicially affected by Special Agent Murr's neutral statement regarding his professional duties.

For the first time on appeal, Mays raises three other alleged instances of prosecutorial misconduct. We review these allegations under the plain error standard because Mays failed to object to these statements during trial. Wilson, 149 F.3d at 1302 n.5. Plain error occurs if (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected

the "fairness, integrity, or public reputation of the judicial proceedings." <u>United States v. Cano</u>, 289 F.3d 1354, 1363-64 (11th Cir. 2002) (internal brackets omitted).

Mays raises for the first time on appeal that the government acted improperly by cross-examining him as to why he did not tell Detective Oliphant and Special Agent Murr that he was carrying the gun because of the threat against his life. While Mays contends that this question shifted its burden of persuasion to him, he does not explain how the burden was shifted or how he was prejudiced. In fact, on redirect examination, Mays testified that he had explained to Special Agent Murr that he had a firearm because "a lot of people be acting crazy out there . . . [t]hey be shooting, robbing people out in the parking lot." In any event, the question was not error because it probed Mays's "previous failure to state a fact in circumstances in which that fact naturally would have been asserted," <u>Jenkins v. Anderson</u>, 447 U.S. 231, 238-39 (1980), and probed Mays's credibility. <u>United States v. Magdaniel-Mora</u>, 746 F.2d 715, 723 (11th Cir. 1984).

Mays next argues that the government violated the stipulation that Mays would not call his employer because the government, during its rebuttal argument, pointed out that Mays did not call his employer as a witness to confirm that Mays had told him about the threat on his life. The government did not err because Mays

and the government stipulated only that Mays was an employee of the flea market so that Mays would not need to call his employer to verify his employment. The stipulation was not addressed to whether Mays would need to call his employer to verify the threat allegedly made against Mays. Therefore, the government did not violate its agreement with Mays when it mentioned that he had not called his employer as a witness to verify the threat.

Mays finally contends that the government improperly commented during closing arguments that he had told the jury "bald face lie." Undoubtedly, this was error however, it does not rise to the level of plain error because the government had a strong case against Mays, and the government presented its interpretation of the evidence that Mays had lied about the threat he allegedly received in order to present a defense to his charge. In so doing, the government noted Mays's contradictory explanations for his behavior and, before closing arguments, the district court had instructed the jury that "closing arguments [are] not evidence but it is [the lawyers'] opportunity to argue what they believe the evidence and the reasonable inferences that can be drawn from the evidence, what that has shown." See United States v. Rodriguez, 765 F.2d 1546, 1559-60 (11th Cir. 1985) (holding that prosecutor's statements that defendant was a "liar" who "spit on the country that's accepted him" did not warrant reversal in light of strong government case

10

and the district court's repeated instruction that counsel's arguments were not evidence). Mays has not satisfied his burden of showing that the prosecution's actions prejudiced his substantial rights, when considering his allegations in the context of the trial as a whole and assessing their probable impact on the jury. Thus, the district court did not abuse its discretion in denying his motion for a mistrial on this basis.

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**