[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14217
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cr-60089-BB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID STIFF,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 15, 2019)

Before WILLIAM PRYOR, JILL PRYOR and GRANT, Circuit Judges.

PER CURIAM:

David Stiff appeals his conviction for possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  Stiff argues, for the first time on appeal, that the district court erred when it admitted into evidence Stiff's videotaped statement.  The statement was made during an interview with an FBI agent, which Stiff argues occurred in violation of his *Miranda* rights.[1]  Stiff also contends that the district court erred in denying his motions for a mistrial based on the government's references during the trial to other crimes not charged and irrelevant conduct.  After careful consideration, we affirm.

## I.    BACKGROUND

### A. Factual Background

Agent Elliot Heath Graves, a member of the Federal Bureau of Investigation's ("FBI") Crimes Against Children Unit in Miami, Florida, was working as an online undercover agent when he identified an internet IP address that had been used to share child pornography.  The pornography was shared from a computer at that IP address using Ares, a peer-to-peer network.  Graves obtained a search warrant for the residence associated with that IP address.  Pursuant to the warrant, the FBI searched the home of Janet Mount, who lived with her son, daughter-in-law, and three grandchildren in Sunrise, Florida.  None of the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

electronic devices found at the home during the search revealed any evidence of child pornography.

The FBI, after interviewing Mount, learned that: (1) Stiff had been living at Mount's residence on and off, (2) he had lived there during the time that the pornography had been shared, and (3) he had accessed the internet while there. The family also informed the FBI that Stiff, who was working as a truck driver, was on the road in Toughkenamon, Pennsylvania. Based on this information, the agents contacted the FBI in the Philadelphia area where Stiff was located. FBI agents from a satellite office near Toughkenamon then obtained a search warrant for Stiff's truck and his person. The FBI agents located Stiff at a warehouse and executed the search warrant. In their search of Stiff's truck, the FBI agents found a computer; an external hard drive; a Wi-Fi hotspot device; an SD card, which is an electronic storage device; multiple thumb drives; and two cell phones.

Stiff was transported by the FBI agents to a local police station two and a half miles away, and his truck was towed. He was wearing shorts and it was 20 degrees Fahrenheit outside. FBI agent Jennifer Morrow questioned Stiff in the police station for over two and a half hours; this interview was recorded. Before beginning the interview, Morrow told Stiff that he was not under arrest, he was free to leave, and he did not have to speak to her. She also told him that the interview was being recorded. Morrow also told Stiff that he could not "have any

3

of [his] items back until the search is completed" and that "until the truck is released to [him], there's not much [he] can do." Doc. 60 at 138.[2]

Morrow explained to Stiff that the search warrant was issued in response to an investigation regarding child pornography. She explained that Stiff's electronic devices would be searched pursuant to the search warrant. During the interview with Morrow, Stiff admitted that child pornography would be found on his electronic devices, he had obtained the images from Ares, and he had planned to delete the images in question because he "wanted to stop." *Id.* at 152. Morrow told Stiff that law enforcement's immediate concern resulted from the discovery that there were young children in Mount's residence where the pornography had been downloaded, stating, "you see why we're here?" *Id.* at 195. Stiff confirmed that he understood and told Morrow that he cared about the children and would never have done anything to harm them. After stating that Stiff would be free to leave, he could return to his trucking routes, and he would be receiving his property back, Morrow wrapped up the interview and told Stiff to check in with her in a couple of days with his new cell phone information.

For close to a year, Stiff checked in regularly with the FBI, first staying in contact with Morrow and then with Graves. Graves felt that an experienced interviewer was needed to interview Stiff to determine whether Stiff had done

---

[2] "Doc. #" refers to the numbered entries on the district court's docket.

anything inappropriate with Mount's granddaughter, who had been living in the residence while he lived there. As a result, a second interview occurred in Miami almost 10 months after the search had been executed. This interview was not recorded, but Graves observed it. According to Graves's recollection, Stiff admitted after being given *Miranda* warnings that he downloaded and watched child pornography while he was living at Mount's residence. Stiff also mentioned that Mount's granddaughter would occasionally sleep with him and Mount in the bed but declared that nothing inappropriate occurred. Stiff was asked in the interview if he had ever received any viruses on his computer as a result of downloading pornography; he replied that he had not.

A few months after the interview, Graves contacted Stiff and informed him that he was going to be arrested and should turn himself in. Graves stated that because of Stiff's cooperation, he would recommend the least charge. In this call, Stiff mentioned for the first time that his computer had been hacked and that he was under the impression the FBI knew that a hacker—not Stiff—had downloaded the child pornography. The FBI was unable to find evidence of hacking on Stiff's electronic devices.

**B. Procedural History**

Stiff was indicted and charged with a single count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  He pled not guilty.  Prior to trial, Stiff filed no motion to suppress.

Stiff's case was tried before a jury.  The jury heard, among other things, about Stiff's interviews with law enforcement.  Stiff's recorded interview with Morrow was played for the jury, and the recording and a transcript of the interview were entered into evidence.  The jury heard on the recording Morrow's statement that law enforcement was there because they had discovered that young children were living in the home in which the pornography had been downloaded.  Stiff did not object to the admission into evidence of the recording or transcript.

Graves testified at trial about the interview that he ordered with Stiff.  He explained that he wanted a more experienced interviewer to speak with Stiff to determine whether anything inappropriate had occurred between Stiff and Mount's granddaughter.  Graves testified regarding Stiff's statements in the second interview that Mount's granddaughter occasionally slept in the bed with him and Mount.  Stiff raised no objection at the time of this testimony.  Graves also testified that he sent the child pornography found on Stiff's laptop to the National Center for Missing and Exploited Children ("NCMEC"), which was able to confirm that the children depicted were actual victims whose ages were known.  Stiff objected on relevance grounds to this testimony and reserved a motion for a mistrial.

6

At the end of that day's proceedings, the court took up Stiff's reserved motion. Stiff argued for a mistrial on two grounds. First, he argued that the reference to the NCMEC was inflammatory and irrelevant. Second, he argued, despite not having objected during the testimony, that a mistrial should be granted due to Graves's and Morrow's references to Mount's granddaughter. Stiff explained that he had not objected when the testimony was presented because he "believed that the Government was going to clarify before the jury with one of these witnesses that Mr. Stiff was cleared of [any molestation charges] through a polygraph that he took." Doc. 61 at 137. Stiff argued that the references, peppered throughout the trial, would cause the jury to view Stiff as a child molester, specifically that there was "this floating accusation [of child molestation] out there that hasn't been cleared up." *Id.*

With respect to the first ground, the district court found that any harm caused by the reference to the NCMEC did not require a mistrial and offered to give the jury a curative instruction. Stiff's attorney responded that whether he would want a curative instruction depended on what the court did in response to his second argument for a mistrial because the two issues were related.

Regarding the second ground, the court stated that it did not understand why the government had referenced Mount's granddaughter but determined that any prejudice that may have occurred did not rise to the level required to declare a

7

mistrial.  The court indicated that Stiff could use cross examination to clarify that no evidence of inappropriate contact was found.  The court further suggested that either it could give a curative instruction stating that there was no evidence that Stiff had molested any children or the government in its direct examination of Graves could establish that there was no such evidence.  After Stiff replied that he had no preference, the court ordered the government clarify the issue during Graves's direct examination.

The following day at trial, the government requested that it be allowed to instruct the witness to clarify that Stiff was not being charged with, nor was there any evidence of, child molestation.  The government wanted to instruct Graves first to respond "no" when asked whether evidence of sexual molestation had been found and second not to reference the NCMEC.  Stiff did not object to this instruction and told the court that a curative instruction would not be necessary if these steps were taken.  The court permitted the government to instruct Graves accordingly.  Graves then testified that there was no evidence that Stiff had molested any children, and he did not reference the NCMEC.

After the government rested its case, Stiff took the stand to testify on his own behalf.  On cross examination he testified that Morrow told him in his initial interview that he was free to leave, but he felt that he could not leave because it was 20 degrees outside (and the evidence showed he was wearing shorts), he was

1,200 miles away from home, and the police had his truck keys and his wallet, which contained his credit card and ID.  When asked if there was child pornography in a folder on his laptop, Stiff testified that if there was child pornography on his laptop, he was not responsible for putting it there.  The government then asked Stiff if he was aware that he was not charged with downloading, receiving, or trading child pornography.  The government clarified that Stiff understood that these crimes were different than possessing child pornography, with which Stiff had been charged.  Stiff did not object to this line of questioning.

Stiff was also asked on cross examination about his last phone conversation with Graves.  The government asked why it was only after Graves said, "[l]isten, you've been cooperative and we're going to do the best we can for you.  We'll charge you with possession and not receipt, not distribution . . . ." that Stiff informed Graves, for the first time, that his computer had been hacked.  Doc 62 at 98.  Stiff objected to the government's question, claiming it was based on hearsay, and reserved a motion for a mistrial.  The court overruled the objection but reserved ruling on the motion.

At the close of all the evidence, Stiff brought up his reserved motion.  He argued for a mistrial on the ground that the government's cross examination of him could lead the jury to believe that he was guilty of much more than possession of

9

child pornography but had somehow negotiated leniency.  The government

suggested that the district court give a curative instruction for the jury to consider

only the crime charged and not to consider the government's decision not to charge

other offenses.  Stiff replied that the government's proposed curative instruction

was unacceptable because it could create an impression that other charges could

have been filed against Stiff.  The court agreed with Stiff that the curative

instruction suggested by the government would only add harm, but the court did

not agree that the prejudice merited a mistrial.  The court denied the motion.  The

jury found Stiff guilty of possession of child pornography, and the district court

sentenced him to 110 months of imprisonment.

## II.    DISCUSSION

### A.    *Miranda* **Violation**

We first address Stiff's arguments regarding his claim that Morrow's

interview violated *Miranda*.  At trial, the government played the recorded

interview and introduced the accompanying transcript.  Stiff argues, for the first

time on appeal, that admitting into evidence his statements from the recorded

interview violated his *Miranda* rights.  Stiff contends that because he was in

custody and Morrow did not deliver *Miranda* warnings before beginning the

interview, the recorded statements should have been suppressed.

The exclusionary rule applies to statements made by a defendant who, in a "custodial interrogation," has not received his *Miranda* warnings.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  To exclude such evidence, a motion to suppress must be filed.  A motion to suppress must be brought before trial.  Fed. R. Crim. P. 12(b)(3)(C).  Failure to make a pretrial motion to suppress, in the absence of a showing of good cause, constitutes a waiver.  Fed. R. Crim. P. 12(c)(3); *United States v. Lall*, 607 F.3d 1277, 1288 (11th Cir. 2010).[3]

Stiff failed to file a pretrial motion to suppress.  Although failure to file a pretrial motion to suppress can be excused if there was good cause for the failure, Stiff raised no argument about good cause.  He cannot raise this argument for the first time on appeal.  *Lall*, 607 F.3d at 1288.  Accordingly, we do not review this issue.[4]

## B.    Motions for a Mistrial

---

[3] Federal Rule of Criminal Procedure 12(b)(3)(C) was amended in 2014 to remove the word "waiver;" however, *Lall* remains good law.  The rule was amended because the term "waiver" ordinarily refers to the intentional relinquishment of a known right, and the rule does not require a determination of the party's intent.  Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments.  Because the new paragraph retains the existing standard for untimely claims, *id.*, *Lall* remains binding.

[4] Stiff concedes that the *Miranda* issue was not properly raised below in the district court. He contends however, that his failure to raise the issue below subjects him to plain error review and not waiver.  We are unconvinced.  Our precedent is clear that motions to suppress must be made pretrial, and that failure to do so, without a showing of good cause, constitutes waiver. Stiff has offered no reasons why such a motion was not made.

11

Stiff argues on appeal that the district court erred in denying his motions for a mistrial.  According to Stiff, a mistrial was warranted due to the government's insinuation during trial that Stiff had "done more than knowingly possess images containing child pornography" and "somehow negotiated leniency."  Appellant's Br. at 11.  Because Stiff's substantial rights were not prejudicially affected, we conclude that the district court did not abuse its discretion in denying Stiff's motions for a mistrial.

We review for an abuse of discretion a district court's denial of a motion for a mistrial.  *United States v. Ettinger*, 344 F.3d 1149, 1161 (11th Cir. 2003).  The district court is in the best position to determine "the prejudicial effect of a statement or evidence on the jury."  *United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009) (internal quotation marks omitted).  To show an abuse of discretion in the denial of a motion for a mistrial, Stiff must show that his substantial rights were prejudicially affected—that is, "there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different."  *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007).  To determine whether this standard has been met, we consider the context of the entire trial and any curative instructions that were given.  *Id.*  When the evidence of the defendant's guilt is overwhelming, it is unlikely that substantial prejudice occurred.  *See United States v. Wilson*, 149 F.3d 1298, 1302 (11th Cir. 1998).

12

### 1.    References to Child Molestation

Stiff argues that the government's references to Mount's granddaughter, which occurred despite the lack of evidence that Stiff had acted inappropriately with her, insinuated that he had committed more misconduct than possession of child pornography and therefore prejudiced his substantial rights. Stiff claims that various statements made during trial were problematic in this respect. The first was the statement Morrow made in the recorded interview expressing concern for the children in Mount's home. In response, Stiff acknowledged in the interview that he understood why Morrow was concerned but stated that he would never do anything inappropriate with Mount's grandchildren. The second statement at issue was Graves's testimony that Mount's granddaughter occasionally slept in the same bed as Stiff and Mount. Graves testified in response to the very next question that Stiff had told him nothing inappropriate ever happened with the child. The third statement at issue occurred when Graves testified that he wanted an experienced interviewer to conduct an interview with Stiff in Miami because he had concerns about Mount's granddaughter.

When the district court took up the motion for a mistrial regarding these statements, it concluded that the statements did not create prejudice warranting a mistrial. The court nonetheless offered to give a curative instruction or instruct the government to clarify that there was no evidence of child molestation. After Stiff

13

indicated that either would be acceptable, the government clarified by having Graves confirm that "there is no evidence that David Stiff was involved in the molestation of any children." Doc. 62 at 5.

We note that as to Graves's testimony relating to his reasoning behind the second interview in Miami, the reason for that interview does not appear to have been relevant to a fact of consequence in the case, as it was unnecessary to establish why the officers followed Stiff to Philadelphia, why they conducted the search of Mount's home or Stiff's truck and person, or why Stiff was initially interviewed in this case. *See* Fed. R. Evid. 401, 402. Even if the information was relevant, it was outweighed by the risk of undue prejudice to Stiff. *See* Fed. R. Evid. 403.

Nonetheless, given the evidence of Stiff's repeated denial of any inappropriate conduct and the clear corrective statement by Graves that there was no evidence of child molestation, we conclude that there was no reasonable probability that but for the remarks, the result of the trial would have been different. Therefore, the district court did not abuse its discretion in denying the motion for a mistrial on this ground. *See Wilson*, 149 F.3d at 1302 ("The record reveals that the district court made an effort to cure any prejudice that may have resulted from the prosecutor's remarks.").

   2.    **References to Negotiated Leniency**

14

The second ground for a mistrial Stiff advances relates to statements made during his cross examination. Stiff claims that the government improperly implied through its questioning that he could have been charged with multiple different crimes but had somehow negotiated for leniency. Specifically, references to different crimes occurred when Stiff testified that if there was child pornography found in one of his computer folders, he had not put it there. The government clarified, in response, that Stiff understood he was not being charged with downloading, receiving, distributing, or sharing child pornography, and that these charges were different than possessing child pornography—the charge at issue. Stiff did not object at the time of this questioning.

Stiff argues that later in his cross examination, the government improperly implied that he had negotiated for leniency. Specifically, Stiff challenges statements made when the government questioned him about his delay in mentioning to the FBI that his computer had been hacked. The government asked Stiff why it was only after Graves had said, "[l]isten, you've been cooperative and we're going to do the best we can for you. We'll charge you with possession and not receipt, not distribution, but work your way down here. You should turn yourself in," that Stiff informed Graves, for the first time, of the hacking. Doc 62 at 98. Stiff objected during trial and reserved a motion for a mistrial.

15

Stiff claims that, together, these statements highlight all the crimes with which he could have been charged and imply that he negotiated with the government to avoid being charged with more than possession of child pornography. The government suggested that the court give a curative instruction that other charges should not be taken into consideration, but Stiff believed, and the district court agreed, that such an instruction potentially would cause more harm. The court concluded, however, that the statements did not warrant a mistrial. We conclude that the district court did not abuse its discretion in denying the motion for a mistrial.

Stiff argues that the statements suggested he was more likely to be guilty of this offense because he committed worse offenses and that this implication allowed the jury to draw an impermissible inference similar to one prohibited under Federal Rule of Evidence 404(b). *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). We find this argument unpersuasive. The government never presented evidence or claimed that Stiff was guilty of other, worse offenses. In fact, the government clarified through questioning that Stiff was not being charged with other offenses.

Stiff also argues that the implication that he successfully negotiated for a lesser charge was prejudicial because it caused the jury to be comfortable

16

convicting him of what it perceived to be a lesser offense. Even if we assume that the testimony should have been excluded, we cannot say its admission prejudicially affected Stiff's substantial rights. Given the substantial evidence at trial that Stiff did in fact possess child pornography, he cannot show a reasonable probability that, but for these statements, the outcome of his trial would have been different. *See Newsome*, 475 F.3d at 1227; *see also Wilson*, 149 F.3d at 1302.

The government presented evidence at trial that Stiff admitted that: (1) he had been the person in Mount's house who used Ares, the peer-to-peer network, (2) he downloaded and looked at child pornography, and (3) child pornography would be found on his computer. Additionally, the government presented evidence that child pornography had been downloaded using Mount's IP address while Stiff was at Mount's house, Stiff's search history had terms associated with child pornography, child pornography was in fact found on Stiff's computer, and there was no evidence that the computer had been hacked.

Given this substantial evidence, we conclude that Stiff cannot show that but for the evidence he challenges, the jury would have found him not guilty. The district court, therefore, did not abuse its discretion in denying Stiff's motions for a mistrial.

## III.    CONCLUSION

17

For all the foregoing reasons, we affirm the district court's denial of Stiff's motions for a mistrial.

**AFFIRMED.**