[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2012
JOHN LEY
CLERK

_____

No. 09-16027

_____

D.C. Docket Nos. 08-00029-CR-1-SPM-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE DEWEY KEEN, JR.,
a.k.a. Billy Keen,

Defendant-Appellant.

_____

Nos. 09-16028, 10-10438, 10-10439

_____

D.C. Docket Nos. 08-00039-CR-1-SPM-AK, 1:08-cr-00039-SPM-AK-3,
1:08-cr-00039-SPM-AK-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN LEE DRIGGERS,

WILLIE DEWEY KEEN, JR.,
a.k.a. Billy Keen,
ALTON JAMES LAND,

                                                  Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(April 5, 2012)

Before MARTIN, HILL and EBEL,[*] Circuit Judges.

MARTIN, Circuit Judge:

Mr. Willie Keen is a former zoning official for Dixie County, Florida, appealing convictions arising from two different cases consolidated on appeal. In one case (No. 09-16027), a jury convicted Mr. Keen of fraudulently obtaining low-income housing funds in violation of federal criminal law. In the other case (Nos. 09-16028, 10-10438, and 10-10439), a jury convicted Mr. Keen, together with former Dixie County Commissioners John Driggers and Alton Land, of federal bribery charges that stemmed from an undercover investigation of corruption in Dixie County.

_____

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

2

On appeal, Mr. Keen, Mr. Driggers, and Mr. Land challenge their convictions. Mr. Keen also contests his sentence. After careful review of the record and the parties' briefs, and after having had the benefit of oral argument, we affirm all convictions. However, because we conclude that the District Court erred in calculating Mr. Keen's sentence, we remand to the District Court with a mandate to vacate the sentence and re-sentence him consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts (No. 09-16027)

In 2002, Mr. Keen enlisted the help of his girlfriend, Kim Deneise Lashley, to obtain low-income housing grant funds to renovate his home. At the time, Mr. Keen was a zoning inspector and codes enforcement officer for Dixie County. Ms. Lashley applied for the funds in her name using a number of documents that had been altered. These documents included a warranty deed, a property tax bill, and a homeowner's insurance policy document. In all of these documents, Mr. Keen's name had been whited-out and Ms. Lashley's name had been hand-written into the space where Mr. Keen's name had previously been.

In 2003, Dixie County awarded Ms. Lashley funds to renovate his property. The funds came from both the state low-income housing program and the federal Community Development Block Grant program. Dixie County was entrusted with

distributing both funds.  Mr. Keen personally arranged for a contractor to do the renovation work.  Five separate payments totaling $32,010 were made by Dixie County to the construction contractor for the renovation work.  The first of these payments was on February 4, 2003.  The last payment, in the amount of $16,368.40, was on October 3, 2003.  Estimates of the total amount of federal funds involved range between $112 and $2,500.  FBI Special Agent Jeffrey Thornburg discovered the fraud in December 2004 while investigating improper applications for state and federal low-income housing funds.

## B. Facts (Nos. 09-16028, 10-10438, 10-10439)

Agent Thornburg first went to Dixie County in response to reports to the FBI about criminal activity there.  Some of these reports focused attention on Mr. Keen, who had been convicted in 1990 of paying voters in a Dixie County election.  Based on allegations against Mr. Keen, Agent Thornburg looked into suspicious housing records in Dixie County and unexpectedly encountered Mr. Keen.  Following this encounter, which led to a threat of prosecution, Mr. Keen agreed to cooperate and to wear a wire to record others involved in criminal activity.  Between March 2005 and April 2006, Mr. Keen recorded several conversations, but Agent Thornburg found him to be indifferent and unresponsive at times.

Later, the FBI set up an undercover operation to investigate complaints about

Dixie County corruption. FBI Special Agent Sean Quinn was sent in undercover as a representative of a fictitious development company based in New Jersey. Agent Quinn assumed the persona of "Sean Michaels" and first visited Dixie County in July 2006. He was advised by a local real estate agent to meet with Mr. Keen as well as then-Dixie County Commissioner Land. On August 2, 2006, Agent Quinn, posing undercover as Sean Michaels, met Mr. Keen for lunch. Mr. Keen was not aware that Agent Quinn worked for the FBI. The two talked about zoning and permitting. The next day, there was a meeting of the Board of County Commissioners. During a lunch recess, Agent Quinn (again, posing undercover as Sean Michaels) told Commissioners Driggers and Land that he was interested in land development in Dixie County. Commissioner Land immediately mentioned that he had property on sale for $3.5 million. Agent Quinn told the commissioners his job was to make sure his company got what it wanted and to resolve any issues or problems in advance.

On August 9, 2006, Agent Quinn, posing as Sean Michaels, met with Commissioner Land to see the property that was for sale. Later that day, Agent Quinn met with Mr. Keen and Commissioner Driggers and discussed development possibilities. At the meeting, Agent Quinn wore a concealed audio recording device. After Commissioner Driggers left the restaurant, Mr. Keen stopped Agent

5

Quinn as they were leaving and told him that "they prefer cash," referring to Commissioners Driggers and Land. Agent Quinn then invited Mr. Keen into his truck to discuss the amount of money for each commissioner. Agent Quinn told Mr. Keen that he had only $1,200 with him, but that he would agree to pay Commissioners Driggers and Land $5,000 each and would begin by giving each of them $600. Mr. Keen said that Commissioner Driggers had asked that he, Mr. Keen, be the one to accept the cash payments. At that point, Agent Quinn gave Mr. Keen $1,200 to distribute. Of this, Mr. Keen evidently gave $300 to Commissioner Driggers and kept the rest for himself.

The next day, Agent Quinn called Mr. Keen and received assurance that the money either had been or was going to be paid to Commissioners Driggers and Land. During the call, Agent Quinn offered money to Mr. Keen, but Mr. Keen declined. Later the same day, Mr. Keen called Agent Thornburg. He allegedly told Agent Thornburg that there was a developer who wanted to pay Commissioner Land for permits and that the money was to be disguised as a campaign contribution.

On August 23, 2006, Agent Quinn met with Commissioner Land, who indicated that the $5,000 payment previously discussed with Mr. Keen was fine. Commissioner Land was given a $2,000 payment at that time. Agent Quinn

allegedly stressed to Commissioner Land that the money was for buying his favorable vote on the Board of County Commissioners, not for purchasing property. Commissioner Land indicated everything would go smoothly because the development would have the votes of three commissioners. Commissioner Land said that he would give another commissioner $1,000 to get his vote of support. Later on the same date, Commissioner Driggers accepted $3,000 from Agent Quinn for his vote. Commissioner Driggers and Agent Quinn also discussed Mr. Keen's prior receipt of money, and Commissioner Driggers told Agent Quinn that Mr. Keen had only given him $300. Commissioner Land later advised Agent Quinn that he would get his share from Mr. Keen. Commissioner Driggers said he was confident Mr. Keen was using the extra cash to help him.

On August 25, 2006, Mr. Keen tried to contact Agent Thornburg. That same day, he recorded a conversation with Commissioner Land. During the conversation, Mr. Keen told Commissioner Land that Mr. "Michaels" had made a hint about making a campaign contribution and that Mr. Keen had told Mr. Michaels "they'd rather have cash than they would [a] check." Mr. Keen said nothing about having received money from Agent Quinn. Then, on August 28, 2006, Agent Thornburg and Mr. Keen were able to reach each other by phone. During the conversation, Mr. Keen allegedly provided Agent Thornburg with the

name and address of Mr. Michaels and told Agent Thornburg that Mr. Michaels had given him $600, half of which he passed on to Commissioner Driggers.

Over the course of the next couple months, Agent Quinn gave thousands of dollars more to Commissioners Driggers and Land. Both commissioners later lost their elections. On November 15, 2006, Agent Quinn met with Commissioner Driggers and then with Commissioner Land. During the meetings, both commissioners offered to continue to assist Agent Quinn in obtaining any necessary rezoning.

## C. Procedural History (No. 09-16027)

On September 23, 2008, a federal grand jury indicted Mr. Keen for violating 18 U.S.C. §§ 666 and 2 by fraudulently obtaining property from a local government receiving federal funds.[1] A jury trial was held. At the start of the trial, Mr. Keen objected to the government's proposed jury instruction regarding the meaning of "agent," as that term is defined in 18 U.S.C. § 666. The District Court took the question under consideration until the close of evidence. Mr. Keen also expressed to the Court concern about the statute of limitations. At the close of the government's case-in-chief, Mr. Keen moved for judgment of acquittal as a matter

---

[1] Title 18 U.S.C. § 2 provides that one who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States "is punishable as a principal." 18 U.S.C. § 2(a).

8

of law. He argued that the statute of limitations had expired before his indictment on September 23, 2008, and that the government's proof was not sufficient to establish that Mr. Keen was an "agent" for purposes of § 666. The District Court denied Mr. Keen's motion and gave the jury instruction proposed by the government, which was modeled after the Eleventh Circuit's Pattern Jury Instructions (Criminal Cases), Offense Instruction 24.2. The jury found Mr. Keen guilty as charged.

D. Procedural History (Nos. 09-16028, 10-10438, 10-10439)

In October 2008, a federal grand jury returned an indictment charging Mr. Keen, Mr. Driggers, and Mr. Land with conspiring to commit fraud involving an organization receiving federal funds in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B); accepting or agreeing to accept a bribe, in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2; and making a false statement to the FBI, in violation of 18 U.S.C. § 1001(a). Following a four-day trial in August 2009, each defendant was convicted as charged. Throughout the trial, excerpts from numerous audio and video recordings made during the undercover bribery investigation were played for the jury. Several weeks after the jury verdict, the District Court acquitted Mr. Keen of making a false statement, but denied all other motions for judgment of acquittal. The District Court then sentenced the defendants. Mr. Driggers and Mr. Land were

9

each sentenced to thirty-seven months imprisonment. Mr. Keen was sentenced simultaneously for his offenses in Case Nos. 09-16027 and 09-16028. After his objections to the calculation of his Guideline sentence were overruled, Mr. Keen received two concurrent seventy-eight-month sentences of imprisonment, followed by three years of supervised release.

## II. DISCUSSION

### A. Defining "Agent" (No. 09-16027)

Mr. Keen first contests the sufficiency of the evidence supporting his conviction under 18 U.S.C. §§ 666 and 2 for fraudulently obtaining property from an organization receiving federal funds (No. 09-16027). To obtain a conviction under § 666, the government was required to establish the following elements: (1) Mr. Keen was an agent of Dixie County; (2) Mr. Keen obtained by fraud property that was owned by, or under the care, custody, or control of Dixie County; (3) the fraudulently obtained property had a value in excess of $5,000; and (4) during a continuous one-year period beginning no earlier than one year prior to Mr. Keen's fraudulent conduct and ending no later than one year after the conduct,[2] Dixie County received in excess of $10,000 under a federal program involving federal

---

[2] So long as it does not exceed one year, "[s]uch period may include time both before and after the commission of the offense." 18 U.S.C. § 666(d)(5).

assistance monies.  See 18 U.S.C. § 666.

On appeal, Mr. Keen claims the government failed to prove the first element, that is, that he was an agent of Dixie County.  He does not dispute that he was a zoning official employed by Dixie County.  But he insists that this alone was not sufficient to qualify him as an agent of Dixie County under 18 U.S.C. § 666.  That is because, according to Mr. Keen, for an individual to qualify as an agent of an entity, the individual must be authorized to act on behalf of the entity specifically with respect to its funds.  And because the government did not offer evidence showing that he was authorized to act with respect to Dixie County's funds, Mr. Keen asserts that the District Court erred in denying his motion for judgment of acquittal.

We review de novo both the denial of a motion for a judgment of acquittal and the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict.  United States v. Tampas, 493 F.3d 1291, 1297–98 (11th Cir. 2007).  We review questions of law and application of statutes de novo.  United States v. McNair, 605 F.3d 1152, 1213 n.87 (11th Cir. 2010).

Because Mr. Keen's argument turns on an interpretation of the term "agent"

that is unsupported by the plain language of § 666, we reject it. The statute defines an "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. § 666(d)(1). Nowhere does the statutory text either mention or imply an additional qualifying requirement that the person be authorized to act specifically with respect to the entity's funds. Rather, this is something Mr. Keen urges us to read into the statute in order to contain its broad scope for prosecuting fraud and corruption within entities that receive federal assistance funds. To be sure, Mr. Keen points out that the Fifth Circuit adopted a similar interpretation of the term "agent" in United States v. Phillips, 219 F.3d 404 (5th Cir. 2000). However, absent the need to avoid absurd consequences, we generally may not reinterpret the plain meaning of a statute. United States v. Brown, 333 U.S. 18, 27, 68 S. Ct. 376, 381 (1948). And because Mr. Keen has not shown how any absurd consequence would result from applying the plain text of the statute, we must decline to read into the definition of "agent" a requirement that the person be authorized to act with respect to the entity's funds. Instead, we conclude that to qualify as an agent of an entity, an individual need only be authorized to act on behalf of that entity.

Section 666's legislative history and related Supreme Court jurisprudence

12

validate this interpretation.  Entitled "Theft or bribery concerning programs receiving Federal funds," 18 U.S.C. § 666 was enacted "to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery."  S. Rep. No. 98-225, at 370 (1983); accord Sabri v. United States, 541 U.S. 600, 606, 124 S. Ct. 1941, 1946 (2004).  According to the Supreme Court, to effectuate this purpose, Congress did not limit itself merely to going after corrupt individuals who abuse their positions to skim federal funds.  In addition, Congress was committed to the even broader objective of ensuring "the integrity of organizations participating in federal assistance programs."  Fischer v. United States, 529 U.S. 667, 678, 120 S. Ct. 1780, 1787 (2000).  The recognition of that ambitious objective, in turn, has led the Court repeatedly to reject statutory constructions aimed at narrowing § 666's scope, in favor of a broad reading.  See Sabri, 541 U.S. at 606–07, 124 S. Ct. at 1946–47 (rejecting reading into the statute an extra-textual requirement of connection with federal money because doing so would unnecessarily obstruct the federal interest in addressing risks to federal monies); Fischer, 529 U.S. at 677–79, 120 S. Ct. at 1787–88 (favoring a broad definition of "benefits" in order to realize "Congress' expansive, unambiguous intent" to ensure organizational integrity, id. at 678, 120 S. Ct. at 1787); Salinas v. United States, 522 U.S. 52, 57–59, 118 S. Ct. 469, 473–74 (1997) (pointing to the

13

lack of a basis in either the text of § 666 or its legislative history "to circumscribe the statutory text").

This legislative history and case law together reinforce the conclusion that the plain language interpretation of § 666 best reflects Congress' intent. Mr. Keen argues that Congress could not possibly have intended to target thieves and cheats who are defrauding their employer, if the employees are not abusing their positions in order to do so. But, even if these thieves and cheats are not specifically using their positions to defraud the entity employing them, it cannot be denied that their fraudulent conduct poses a threat to the integrity of the entity, which in turn poses a threat to the federal funds entrusted to that entity. Cf. Fischer, 529 U.S. at 681–82, 120 S. Ct. at 1789 ("Fraudulent acts threaten the [federal] program's integrity. They raise the risk participating organizations will lack the resources requisite to provide the level and quality of [service] envisioned by the program."). Thus, reading § 666 to narrow its scope seems inconsistent not only with the "expansive, unqualified language" that Congress has elected to use, Salinas, 522 U.S. at 56, 118 S. Ct. at 473, but also with Congress' clear objective of ensuring the integrity of entities receiving substantial sums of federal funds.

This analysis also explains why Mr. Keen's constitutional concern regarding the scope of § 666 lacks merit. Mr. Keen suggests that, without a limiting

14

construction, § 666's application to local government employees who have no authority over federal funds would exceed Congress' powers under the Spending Clause and the Necessary and Proper Clause. But "Congress does not have to sit by and accept the risk of operations thwarted by local and state improbity." Sabri, 541 U.S. at 605, 124 S. Ct. at 1946. Under the Necessary and Proper Clause, Congress may take any means "rationally related" to implementing its constitutionally enumerated powers, United States v. Comstock, __ U.S. __, __, 130 S. Ct. 1949, 1956–57 (2010), and hence has authority "to see to it that taxpayer dollars appropriated under [the Spending Clause] are in fact . . . not frittered away in graft or on projects undermined when funds are siphoned off." Sabri, 541 U.S. at 605, 124 S. Ct. at 1946. Clearly, measures to police the integrity of entities receiving federal funds fall under the scope of this power. And just as it is constitutionally immaterial under § 666 if siphoned funds cannot be traced to specific federal dollars, see id. at 605–06, 124 S. Ct. at 1946 (emphasizing that "[m]oney is fungible" and "can be drained off here because a federal grant is pouring in there," id. at 606, 124 S. Ct. at 1946); Salinas, 522 U.S. at 56–57, 118 S. Ct. at 473–74, we conclude it is similarly immaterial under the Constitution if funds are siphoned off in a way that does not involve an abuse of one's job-related authority. As the Supreme Court has made clear, it is "enough" for constitutional

15

purposes "that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest." Sabri, 541 U.S. at 606, 124 S. Ct. at 1946.

Having rejected Mr. Keen's reading of the term "agent," we turn to whether the government established that Mr. Keen was an agent of Dixie County under the plain language of the statute. The heart of this inquiry is whether the government proved that he was "authorized to act on behalf of" Dixie County at the time he fraudulently obtained the low-income housing funds. 18 U.S.C. § 666(d)(1). At trial, the government presented uncontested evidence that Mr. Keen was employed as a zoning inspector and codes enforcement officer of Dixie County during the time he committed fraud. In this role he drove a county vehicle. Thus, the jury heard evidence that Mr. Keen was a county employee assigned to help enforce its codes and who was authorized to use county assets to perform his work. This was sufficient evidence from which the jury could conclude beyond a reasonable doubt that he was "authorized to act on behalf of" Dixie County. Thus, the District Court did not err in denying Mr. Keen's motion for judgment of acquittal.

Reviewing Mr. Keen's further challenge to the District Court's jury instructions for an abuse of discretion, see United States v. Eckhardt, 466 F.3d 938, 947–48 (11th Cir. 2006), we also conclude that the District Court did not abuse its discretion by either rejecting his requested jury instruction or instructing the jury

on the meaning of "agent." Mr. Keen proposed a jury instruction that read in part: "To be considered an agent, the Defendant must have somehow taken advantage of his position as an employee of Dixie County to steal the money in question from the County." For the reasons we have discussed, however, the law does not require a jury to find that Mr. Keen had "taken advantage of his position as an employee" in order to find that he violated § 666. As a result, the District Court did not abuse its discretion in rejecting Keen's proposed instruction. See id. at 947. Also, because the District Court's jury instructions as to the definition of "agent" tracked the language of § 666 and did not improperly guide the jury in its deliberations, we conclude that the Court did not abuse its discretion in instructing the jury.

B. Statute of Limitations (No. 09-16027)

Mr. Keen challenges his fraud conviction under 18 U.S.C. §§ 666 and 2 on another basis as well. He argues that the District Court incorrectly determined the statute of limitations period for his offense and that a proper calculation would have barred his conviction. We review de novo the District Court's interpretation and application of the statute of limitations. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

Mr. Keen claims the only limitations period pertinent to his case began on the date when all the elements of a § 666 offense were first satisfied. That date was

17

March 18, 2003, when Dixie County's fraudulently-induced payments to Mr. Keen's construction contractor exceeded the $5,000-value threshold necessary for a § 666 violation. See 18 U.S.C. § 666(a)(1)(A)(i). According to Mr. Keen, this means the five-year statute of limitations under 18 U.S.C. § 3282(a) expired on March 18, 2008. And since the grand jury did not return the indictment against him until September 23, 2008—well after March 18, 2008—he claims his conviction was not valid.

This argument might have had merit had the government failed to prove that Mr. Keen fraudulently induced Dixie County to disburse $16,368.40 in low-income housing monies to his construction contractor on October 3, 2003. But the government in fact did so, thus establishing all of the elements of a § 666 offense within the five-year period prior to the filing of the indictment on September 23, 2008. As a result, Mr. Keen's conviction did not violate the five-year statute of limitations.

In effect, Mr. Keen asks this Court to disregard the October 3, 2003 violation of § 666 and focus only on the March 18, 2003 violation for two reasons. The first is the government's delay in clarifying that it was "pursuing, as an individual count, the $16,000 paid in October." Mr. Keen points out that the government made this clear only after the first three witnesses at the trial testified, and that such

18

a delay was "fundamentally unfair." Yet, he fails to identify how the government's presentation of evidence of the October payment was in any way inconsistent with the indictment's broad language, which alleged a single count of violating § 666 "between in or about March 2003, and on or about October 3, 2003." Without either any demonstrated inconsistency with the indictment or a more serious delay, the government's presentation of evidence within the time period set out in the indictment does not reach the threshold of fundamental unfairness.

Mr. Keen's second basis for asking this Court to disregard the October 3, 2003 violation in determining the statute of limitations is his belief that the relevant limitations period should be defined only with respect to the earliest violation of § 666 within the period specified by the indictment. Thus, according to Mr. Keen, a later violation of § 666 may not be prosecuted if doing so would contravene the statute of limitations defined by an earlier violation of § 666.

In support, Mr. Keen cites as persuasive authority United States v. Yashar, 166 F.3d 873 (7th Cir. 1999), which holds that the limitations period generally "begins to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct." Id. at 880. However, Yashar is inapposite. In contrast with Mr. Keen, Yashar did not involve the independent commission of a second § 666 offense. Rather, Yashar involved a

19

defendant who, while continuing to commit related criminal conduct after completing an earlier § 666 offense, never committed a second § 666 offense. Nonetheless, the government in Yashar argued that the defendant's continuing criminal conduct, though not itself sufficient to constitute a § 666 offense, should effectively extend the statute of limitations. See id. at 876. The Yashar Court disagreed. Fearing that under the government's approach "the limitations period would be virtually unbounded," id. at 879, the Seventh Circuit refused to extend the statute of limitations on account of the related criminal conduct. At the same time, that court gave no indication that it was limiting the possibility that a later, independent § 666 offense could define the relevant limitations period. Consequently, Yashar is not inconsistent with the approach we take here.

For all of these reasons, we conclude the District Court did not err in denying Mr. Keen's motion for judgment of acquittal based on violation of the statute of limitations.

C. Sufficiency of the Evidence (Nos. 09-16028, 10-10438, and 10-10439)

1.

Turning next to the bribery case (Nos. 09-16028, 10-10438, and 10-10439), Mr. Keen claims that the government failed to prove that he was either soliciting bribes on behalf of Commissioners Driggers and Land or knowingly and

20

voluntarily participating in a conspiracy to solicit bribes. In support, he points to evidence that he was assisting the FBI in investigating the bribery scheme.[3] In light of this evidence, Mr. Keen claims there was no way for a rational trier of fact to have found that he was guilty; thus, the District Court erred in denying his motion for a judgment of acquittal.

We review this denial de novo and view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in favor of the jury's verdict. Tampas, 493 F.3d at 1297–98. Doing so leaves us with no doubt that the evidence here is sufficient. The government presented evidence that Mr. Keen initiated discussions regarding cash payments to the County Commissioners, accepted cash bribes on their behalf, and told Agent Quinn that Commissioners Driggers and Land preferred cash. There was also evidence that Commisioners Driggers and Land understood that Mr. Keen was to act as the intermediary for their bribes, just as he had done for them in the past. Although Mr. Keen insists he was trying to assist the government, he failed to record any of his meetings with Agent Quinn or the meeting with Commissioner

---

[3] This evidence includes Mr. Keen's call to Agent Thornburg on the morning of August 10, 2006, telling Agent Thornburg about the bribery scheme; another call to Agent Thornburg later in the month to report more information; and his submission to the FBI of a surreptitious recording of a conversation he had had with Commissioner Land.

21

Driggers, during which he gave Commissioner Driggers $300. In light of all this evidence, a reasonable factfinder could have disbelieved Mr. Keen's assertion that he was acting as an informant for the FBI, interpreted his calls to Agent Thornburg as a hedge against being caught for the bribery offense, and instead found that he was acting as a participant in the bribery conspiracy. See United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir. 1995) (providing that a "jury is free to choose among reasonable constructions of the evidence" in a case).

2.

For similar reasons and based on the same standard of review, we reject the claims of Mr. Driggers and Mr. Land that the District Court erred in denying their motions for judgment of acquittal on the conspiracy charge. Their claims both hinge on the argument that because Mr. Keen was a government agent who allegedly acted to thwart the purported conspiracy, the government could not have proven that either of them had conspired with anyone other than a government agent. For this reason, they insist that the conspiracy of which they may have been a part carries with it no criminal liability. See United States v. Arbane, 446 F.3d 1223, 1228 (11th Cir. 2006) ("If there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy."). But as we have discussed, there was sufficient evidence for a

reasonable jury to conclude beyond a reasonable doubt that Mr. Keen was acting not as a government agent but as a co-conspirator. Therefore these claims fail, and the District Court did not err in so holding.

3.

Mr. Driggers and Mr. Land also argue that, as a matter of law, they should have been acquitted by the District Court of the bribery charges because the government failed to offer sufficient evidence regarding the county business intended to be influenced by the bribe, as required for convictions under 18 U.S.C. § 666(a)(1)(B). Specifically, Mr. Driggers and Mr. Land allege the government did not prove which particular business or transaction before the Dixie County Board of Commissioners was connected to the bribes nor the value of the benefit to be attained through the bribes. For these reasons, they contend, the District Court erred in denying their motion for judgment of acquittal.

We review de novo the District Court's denial of the motion for judgment of acquittal based on the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, Tampas, 493 F.3d at 1297–98, and conclude that the argument of Mr. Driggers and Mr. Land lacks merit. This Court has made it clear that § 666(a)(1)(B) does not require the government to prove a specific official act for which a bribe was received. See United States v. McNair, 605 F.3d

23

1152, 1188 (11th Cir. 2010) ("Simply put, the government is not required to tie or directly link a benefit or payment to a specific official act by that County employee."). Rather, the government must show only that Mr. Driggers and Mr. Land "corruptly" accepted "anything of value" with the intent "to be influenced or rewarded in connection with any business, transaction, or series of transactions" of the Board. See id. (quoting 18 U.S.C. § 666(a)(1)(B)). That is precisely what the government did when it presented evidence that Commissioners Driggers and Land accepted bribes from Agent Quinn with the understanding that they would facilitate the approval of zoning changes benefitting the fictitious company of "Sean Michaels." Further, by showing that the value of the bribes each received by Commissioners Driggers and Land exceeded $5,000, the government presented sufficient evidence to establish that the value of the transaction met the statutory minimum of $5,000. See United States v. Townsend, 630 F.3d 1003, 1011–12 (11th Cir. 2011) (recognizing that "the value of an intangible in the black market of corruption" may be "set at the monetary value of what a willing bribe-giver gives and what a willing bribe-taker takes in exchange for the intangible"). Consequently, the District Court did not err in denying the motion for judgment of acquittal.

D. Trial Issues (Nos. 09-16028, 10-10438, 10-10439)

1.

At the bribery trial of Mr. Keen, Mr. Driggers, and Mr. Land, the jury heard an excerpt of a recording from a conversation between Commissioner Driggers and Agent Quinn. In the excerpt, Commissioner Driggers told Agent Quinn that Mr. Keen had "spent two years in jail . . . for buying votes." A little while later, Mr. Keen's counsel requested a bench conference and moved for mistrial on the basis that the government had improperly introduced prejudicial evidence of a prior conviction. The District Court denied the motion and issued no curative instruction.[4] Mr. Keen challenges this denial on appeal and we review the District Court's decision not to grant a mistrial for abuse of discretion. United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009).

We have noted that "[a] trial judge has discretion to grant a mistrial since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Delgado, 321 F.3d 1338, 1346–47 (11th Cir. 2003) (internal quotations and citations omitted). Because the government makes no argument that introducing the statement of prior bad acts was proper, the decision to grant a mistrial turned solely on whether "the defendant's substantial rights

---

[4] Mr. Keen's counsel argued that a curative instruction would only make the problem worse.

[were] prejudicially affected. Substantial rights are prejudicially affected when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Adams, 74 F.3d 1093, 1097 (11th Cir. 1996) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)). Thus, the question for us is whether the improper statement about Mr. Keen's prior conviction for "buying votes" undermined confidence in the outcome of the trial.[5]

This is a difficult question in light of the potential prejudice inherent in the statement heard by the jury. As we have said, we give deference to the decision of the District Court because it is in "the best position to evaluate the prejudicial effect" of the statement on the jury. Delgado, 321 F.3d at 1346–47. We are also mindful that the statement was not the only evidence heard by the jury of Mr. Keen's prior corrupt activity. As even Mr. Keen acknowledges, "there was other evidence that painted Keen in a bad light" separate from the improper statement

---

[5] Contrary to the government's assertion, Mr. Keen did not waive this issue by not objecting contemporaneously. We hold his objection was sufficiently timely to avoid waiver. Cf. United States v. Wilson, 149 F.3d 1298, 1301 n.5 (11th Cir. 1998) (noting "we are mindful of a defense counsel's dilemma: Objections may also serve to draw unwanted and unnecessary attention to the prejudicial—albeit improper—conduct").

from the recording, including "evidence that he accepted a bribe on an earlier occasion" on behalf of the commissioners. Thus, even if they had never heard the improper statement at issue, the jury would still have been aware of past acts casting a shadow over Mr. Keen's conduct here. For these reasons, we cannot conclude that the District Court abused its discretion in determining the lack of a substantial due process violation.

However, just because this error does not require the reversal of the conviction does not mean the prosecution did not still commit a serious error. We have previously emphasized that "improper remarks and conduct . . . especially if persistent, ought to result in direct sanctions against an offending prosecutor individually." United States v. Wilson, 149 F.3d 1298, 1304 (11th Cir. 1998). We express no opinion regarding the appropriateness of sanctions here, but we remind "the able attorneys who supervise federal prosecutors throughout this Circuit to renew their efforts to maintain the high level of conduct that has traditionally characterized the office of the United States Attorney." United States v. Modica, 663 F.2d 1173, 1186 (11th Cir. 1981). It is our tradition in this Circuit to "support district judges who take reasonable steps to correct prosecutorial conduct that is not right." Wilson, 149 F.3d at 1304.

2.

Mr. Driggers also contends the District Court erred in denying his motion for judgment of acquittal based on outrageous government conduct that fundamentally undermined the integrity of the electoral process in Dixie County. Specifically, Mr. Driggers emphasizes that the government not only paid him and Mr. Land over $11,000 while they were engaged in a contested election campaign, but did so knowing that both could use this money to purchase votes.

We review this claim de novo, see United States v. Savage, 701 F.2d 867, 868 n.1 (11th Cir. 1983), and determine that it lacks merit. "Outrageous government conduct occurs when law enforcement obtains a conviction for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees." United States v. Ciszkowski, 492 F.3d 1264, 1270 (11th Cir. 2007). As a threshold matter, since there was no evidence presented that Commissioners Driggers and Land actually purchased votes and since both ultimately lost their elections, Mr. Driggers fails to show that the government in fact affected the electoral process in Dixie County, let alone that it fundamentally undermined the integrity of the process. But even if he had shown some impact on the electoral process, he still would have failed to show how the government's conduct did not comport with due process guarantees. Notably in this regard, the District Court instructed the jury on the issue of entrapment, and the

28

jury rejected this defense in the face of evidence of predisposition. For these reasons, Mr. Driggers's claim of outrageous government conduct fails.

E. Sentencing (Nos. 09-16027 and 09-16028)

1.

Mr. Keen argues that the District Court clearly erred in denying him a two-level reduction in his offense level for the bribery charge since he claims he was merely a "minor participant" in the bribery conspiracy. Under the Sentencing Guidelines, a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5 (2008).[6] In determining whether a "minor participant" reduction applies, we have said "the district court must measure the defendant's role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. § 1B1.3." United States v. Rodriguez De Varon, 175 F.3d 930, 934 (11th Cir. 1999) (en banc). In addition, "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." Id.

Reviewing for clear error the district court's finding that Mr. Keen was not entitled to a minor role reduction, United States v. Nguyen, 255 F.3d 1335, 1345

---

[6] Mr. Keen was sentenced under the 2008 edition of the Guidelines Manual.

(11th Cir. 2001), we affirm on this issue under De Varon.  In denying Mr. Keen's

request for a role reduction in his offense level, the District Court concluded that

Mr. Keen "played a significant role in the fraud conspiracy and facilitated contact

between the undercover FBI agent and his codefendants."  Indeed, there was

evidence that Mr. Keen helped initiate the bribery scheme, set the amount of the

bribe, and accepted the role of conveying the bribes to the commissioners.  Mr.

Keen's "significant role" in the conspiracy is thus hardly incongruent with the

conduct for which he was held accountable.  Consequently, even if Mr. Keen is

correct that, as a facilitator, he played a smaller role in the conspiracy than did Mr.

Driggers and Mr. Land, thereby addressing the second De Varon prong, he does not

show how the District Court clearly erred in its analysis under the first and more

important De Varon prong, measuring Mr. Keen's role in the conspiracy against the

conduct for which he was held accountable.  We therefore hold that the District

Court did not clearly err in denying Mr. Keen the two-level reduction.

2.

While convicted of fraud and bribery in two separate jury trials, Mr. Keen

was sentenced in a single proceeding.  In calculating his sentence, the District

Court elected to "group" all of his offenses together pursuant to U.S.S.G § 3D1.2,

resulting in an adjusted offense level of twenty-six and a Guidelines range of sixty-

three to seventy-eight months. Mr. Keen argues that grouping his offenses in this way was erroneous and that his resulting sentence of seventy-eight months imprisonment was procedurally flawed. We agree.

Section 3D1.1 provides that the first step in the process of determining the sentence of a defendant convicted of more than one count is for the court to group the counts of conviction into "Groups of Closely Related Counts." U.S.S.G § 3D1.1(a)(1). Section 3D1.2 then goes on to describe four situations where counts "involve substantially the same harm" and hence where grouping is mandatory. Id. § 3D1.2. Here, the government argues that two situations, represented by subsections (b) and (d), are applicable.

Subsection (b) provides that counts involve substantially the same harm "[w]hen [the] counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." Id. § 3D1.2(b). The government argues that the bribery and fraud counts here satisfied this section because they (1) involved the same victim—the citizens of Dixie County—and (2) had a common purpose—enriching Mr. Keen.

Setting aside for now the fact that the District Court never even mentioned subsection (b) as applying to this case, the associated commentary to the guidelines

clearly indicates that subsection (b) does not apply.[7] That commentary makes clear that subsection (b) "does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm." Id. § 3D1.2 cmt. n.4. Clarifying what this means, the commentary presents an example of a defendant who "is convicted of two counts of rape for raping the same person on different days," and concludes: "The counts are not to be grouped together." Id. § 3D1.2 cmt. n.4 (example (5)). In light of this guidance, we cannot conclude that the fraud and bribery counts—which involved different crimes occurring over three years apart—were "part of a single course of conduct with a single criminal objective," let alone that they represented "essentially one composite harm to the same victim." Id. § 3D1.2 cmt. n.4. In sum, the government's argument about the application of subsection (b) lacks merit.

This leaves subsection (d) as the only possible basis for the District Court's conclusion that the fraud and bribery counts involved substantially the same harm. And indeed, this was the only subsection cited by the District Court to support its decision. Subsection (d) provides that counts involve substantially the same harm

---

[7] Under Supreme Court precedent, "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993).

32

[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Id. § 3D1.2(d).  Subsection (d) also lists certain types of offenses that "are to be grouped under this subsection," including the ones for fraud and bribery involved here.  Id.  The District Court and the government have advanced four reasons why Mr. Keen's fraud and bribery counts fall under this subsection.  None is persuasive.

First, the District Court appears to have reasoned that because Mr. Keen's convictions are listed by the subsection as ones "to be grouped under this subsection," id., grouping is automatically necessary.  However, this argument clashes with our case law, where we have held that the "mere listing" of these offenses as types that "are to be grouped does not automatically necessitate grouping."  United States v. McClendon, 195 F.3d 598, 601 (11th Cir. 1999) (quotation marks omitted).

Second, the government argues that grouping was appropriate under the second clause of subsection (d) because the offense behavior was "ongoing or continuous in nature."  U.S.S.G. § 3D1.2(d).  To support this contention, the government notes that Mr. Keen attempted to conceal evidence of his fraud offense as late as February 2005, after he had already been interviewed by the FBI.  Yet,

Mr. Keen's efforts to conceal his crime from nearly two-and-a-half years earlier neither amounted to a continuation of that crime nor bore any relation to the bribery conspiracy later. Beyond this, there is no indication that § 2C1.1—the relevant offense guideline for the bribery offense—"is written to cover [ongoing or continuous] behavior," as required by the second clause of subsection (d). Id. For these reasons, this argument also fails.

Third, the government argues that grouping was appropriate under the first clause of subsection (d) because "the offense level [for each count was] determined largely on the basis of the total amount of harm . . . or some other measure of aggregate harm," id., specifically, "the aggregate harm and loss to the public trust of Dixie County's citizenry." This argument does not persuade. The first clause of subsection (d) obviously relates to offenses involving tangible harms, as measured by financial harm or loss, drug quantity, or damage to the environment. See id. ch. 3, pt. D, introductory cmt.; id. § 3D1.2 cmt. n.6. There is no indication whatsoever that the clause is intended to apply to offenses involving intangible harms to the public trust. Indeed, if the clause were applied in that way, it would become grossly over-inclusive, since nearly every criminal offense harms the public trust in some way. The government's argument thus attempts to broaden the scope of subsection (d) in a way clearly inconsistent with the Guidelines.

34

Finally, both the District Court and the government contend that the fraud and bribery offenses "reveal[ed] a pattern of conduct which exploited the defendant's position in Dixie County and undermined the public trust." Consequently, the fraud and bribery offenses are sufficiently "closely related" and "of the same general type" that they can be grouped according to Application Note 6 of the Commentary to § 3D1.2. See id. § 3D1.2 cmt. n.6 ("Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection."). In support of this contention, the government points to an example in the associated commentary. According to the example, multiple counts of mail and wire fraud that involve "a monetary objective" may be grouped together, even if they "arise from various schemes." Id. § 3D1.2 cmt. n.6 (example 3).

However, this Court's precedent forecloses the government's theory. In United States v. Harper, 972 F.2d 321 (11th Cir. 1992), we said that counts of drug trafficking and laundering the associated proceeds were not "closely related" for purposes of § 3D1.2(d), even though both were "quantitative in nature" and the money laundering was necessarily connected to the drug trafficking. Id. at 322. In United States v. Jenkins, 58 F.3d 611 (11th Cir. 1995), we declined to group

together counts of transporting stolen goods and money laundering, even though both offenses were clearly committed with an overarching monetary objective.  See id. at 612–13.  Finally, in McClendon, we held that counts of Medicaid fraud and laundering the associated proceeds were not "closely related" for purposes of § 3D1.2(d) because the money laundered was not used to perpetuate the Medicaid fraud.  195 F.3d at 602.  This case law thus clearly precludes this Court from holding, as the government urges, that offenses may be "closely related" even though they took place approximately three years apart, were not "continuing offenses," and were independent schemes that had no necessary connection with one another.

For all of these reasons, we conclude that the District Court erred in grouping Mr. Keen's fraud conviction and bribery convictions together pursuant to § 3D1.2.  And this error was not harmless.  Because his fraud and bribery offenses were grouped, Mr. Keen wrongly received a six-level enhancement based on the $32,010 he fraudulently obtained.  That, in turn, pushed up his Guidelines range to a range of sixty-three to seventy-eight months.  Since nothing indicates the District Court would have otherwise sentenced him to seventy-eight months imprisonment absent this error, we remand this case to the District Court with a mandate to vacate Mr. Keen's sentence and re-sentence him.  See United States v. Barner, 572 F.3d

1239, 1247–48 (11th Cir. 2009) ("An error in the district court's calculation of the Sentencing Guidelines range warrants vacating the sentence, unless the error is harmless. A Sentencing Guidelines miscalculation is harmless if the district court would have imposed the same sentence without the error.").

## III. CONCLUSION

For these reasons, we affirm all convictions of Mr. Keen, Mr. Driggers, and Mr. Land. However, we remand to the District Court with a mandate to vacate Mr. Keen's sentence and re-sentence him consistent with this opinion.

**AFFIRMED IN PART AND CASE REMANDED FOR RE-SENTENCING.**