[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11879
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00069-MCR-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JANE M. MCDONALD,
a.k.a. Janie McDonald,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 19, 2012)

Before TJOFLAT, PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Jane M. McDonald appeals her 15-month sentence for conspiracy to commit wire fraud and/or mail fraud, and actual mail fraud.  McDonald pled guilty to these charges stemming from a scheme to purchase and finance a $2 million condominium through a series of fraudulent financial transactions.  Since McDonald's co-defendant and boyfriend at the time, Jackie Fair, was a major orchestrator of these transactions, McDonald argues that her sentence required a reduction for her minor or minimal role.  McDonald urges this position even though her 15-month sentence already represents a significant downward variance in sentencing.

## I.

The federal grand jury returned an indictment charging McDonald, Fair, and Chris Cadenhead with conspiracy to commit wire and/or mail fraud and actual mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349 (Counts Three and Four). In addition to these charges against McDonald, the indictment charged Cadenhead, Fair, and Randolph Branham with conspiracy to defraud a financial institution regulated by the Farm Credit Administration (FCA), in violation of 18 U.S.C. §§ 1344 and 1349 (Count One), and bribing an officer, director, and employee of a financial institution regulated by the FCA in connection with a loan in violation of 18 U.S.C. § 215(a)(1) (Count Two).

When she pled guilty, McDonald admitted that she and Fair sought to purchase a $2 million penthouse condominium in Destin, Florida, as a personal residence. Fair had a prior federal criminal conviction and a questionable credit history. McDonald did not have enough money to buy the condominium. To finance the condo, the pair got several loans. By all accounts, Fair arranged these loans with various lenders, while McDonald signed the mortgage documents. Along the way, McDonald: 1) signed a number of promissory notes she could not pay; 2) failed to disclose $700,000 of debt and falsely listed her income as nearly $9,000 per month higher than her actual income on a loan application to Genisys Financial Corporation; 3) failed to disclose $700,000 in debt, falsely claimed to own 100,000 shares of Morgan Creek Energy stock worth $500,000, and falsely listed her income at $60,000 a month on a loan application to America's Wholesale Lender processed by New Horizon Financial; and 4) failed to make any payments on the loan she got, also by way of a false application, from America's Wholesale Lender.

McDonald's Presentence Investigation Report (PSI) did not recommend a minor role or minimal role reduction. Despite this, at sentencing her lawyer argued that she had fallen prey to the machinations of a skilled con artist and noted that "[t]here was no intended loss; Ms. McDonald lived in the property and paid down the mortgage as scheduled until it became impossible." Supporting letters

advanced the theory that McDonald was "honest to a fault" and that Fair had used her as a pawn in a broad scheme. Indeed, it is true that Counts One and Two of the indictment involved bribes and kickbacks with lenders that McDonald knew nothing about. The Government countered these arguments by telling the court that it was McDonald's desire to lead the "big life" which led her to go along with the scheme and that "if she didn't commit the crimes that she did, then this crime would never have gotten to the tune of a $2 million loan being written by Bank of America."

The court refused to adjust McDonald's guideline calculation downward. "I agree with Ms. McDonald that she was caught up in something and got carried away," the court explained, but found "that the . . . conduct that she engaged in in Counts Three and Four was central to the fraud that was committed in those counts as regards to those loans and was instrumental." The Court did increase Fair's offense level by two levels due to his major role in the fraud.

While the court did not lower McDonald's offense level, it did impose a 15 month sentence, which was a downward variance from the guideline range of 27–33 months. The court referenced McDonald's lack of criminal history and the lack of a need for deterrence in making this variance. McDonald appeals this sentence in light of the court's failure to give her a minor or minimal role reduction.

## II.

4

A district court must properly and correctly calculate the applicable guideline range. Gall v. United States, 552 U.S. 38, 49-50, 128 S. Ct. 586, 596-97 (2007). "In reviewing a claim under the Sentencing Guidelines, [we review] the district court's findings of fact for clear error and its interpretation of the Guidelines de novo." United States v. Daniels, 685 F.3d 1237, 1244 (11th Cir. 2012). The district court's determination of a defendant's role in the offense is a factual question which we review for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 936-37 (11th Cir. 1999) (en banc). "[W]e acknowledge that a similar fact pattern may on occasion give rise to two reasonable and different constructions," and for that reason "it will be rare for an appellate court to conclude that the sentencing court's [relative role] determination is clearly erroneous." Id. at 945.

"The proponent of the downward adjustment . . . always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." Id. at 939. Section 3B1.2 of the Sentencing Guidelines provides for a reduction of the base offense level where a defendant was a "minor participant" or a "minimal participant" in criminal activity, by two or four levels respectively. U.S.S.G. § 3B1.2. A "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5). A "minimal participant" is one who "lack[s] of knowledge or

5

understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2, comment. (n.4).

Our precedent provides:

> In determining whether a 'minor participant' reduction applies, we have said the district court <u>must</u> measure the defendant's role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. § 1B1.3. In addition, where the record evidence is sufficient, the district court <u>may also</u> measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant.

<u>United States v. Keen</u>, 676 F.3d 981, 997 (11th Cir. 2012) <u>pet. for cert. filed</u>, (U.S. Aug. 1, 2012) (Nos. 12-5595, 12A14) (quotation marks omitted) (emphasis added). The district court need not make any specific findings other than its ultimate determination of the defendant's role in the offense. <u>Rodriguez De Varon</u>, 175 F.3d at 939-40.

In conspiracy and fraud cases, relevant conduct by which we measure the defendant's role includes acts and omissions: (1) by the defendant; (2) by others in furtherance of jointly undertaken criminal activity, if they are reasonably foreseeable; and (3) that were part of the same course of conduct or common scheme as the offense of conviction. U.S.S.G. § 1B1.3(a)(1)-(2). A defendant cannot prove that she played a minor role in the relevant conduct attributed to her offense by pointing to a broader criminal conspiracy for which she was not held

accountable. De Varon, 175 F.3d at 941. The purpose of restricting the analysis to solely the conduct for which the defendant is held accountable is "to punish similarly situated defendants in a like-minded way." Id.

Even where a defendant played a smaller role in a conspiracy than other co-conspirators, a defendant still may not be entitled to a role reduction if she played a significant role in the conduct of the relevant offense. Keen, 676 F.3d at 997. See also, United States v. Zaccardi, 924 F.2d 201, 203 (11th Cir. 1991) ("It is entirely possible for conspiracies to exist in which there are no minor participants . . . . [T]he fact that a participant defendant may be the least culpable among those who are actually named as defendants does not establish that he performed a minor role in the conspiracy.").

### III.

McDonald argues that the district court "clearly erred" in declining to impose a minor role or minimal role reduction because it failed to compare her role to Fair's overarching role.

First, McDonald asserts in a conclusory fashion that she played a minor role because Fair played a major role. But McDonald's claim that if the court determined Fair's role as "major and controlling" then "[t]he flip side of that is that McDonald's role was minor in relation to his" is not dispositive of whether McDonald deserved a downward adjustment. The Government conceded that

7

Fair's role was aggravated and also that without major fraud perpetrated by Fair, the fraud for which McDonald was convicted might not have happened. Nevertheless, the scope of Fair's culpable conduct does not limit that for which McDonald is responsible.

Our inquiry is properly focused on McDonald's role as compared to the relevant conduct for which she was held accountable. De Varon, 175 F.3d at 941. McDonald was held accountable for conspiracy to commit mail fraud and mail fraud stemming from her false loan applications. The court found that without her fraudulent actions the loans would not have been approved. Thus, analogizing to Keen, McDonald's role was "hardly incongruent with the conduct for which [she] was held accountable." 676 F.3d at 997.

Second, McDonald argues that the district court erred because it did not explicitly compare her role to Fair's. But this conflates what a court must do— compare a defendant's actions to the relevant conduct for which she is held accountable—with what it may do—compare the defendant's actions to the conduct of co-defendants. Id. As this Court held in De Varon, "the district court may also measure the defendant's culpability in comparison to that of other participants" but, importantly "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."

8

175 F.3d at 944.  Beyond that, the requirement McDonald seeks—that the court have made a comparison—goes explicitly against what the court need not do: make any specific findings other than the role in the offense.  Id. at 940.  The district court's failure to make a specific comparison was not error, and McDonald was not entitled to a role reduction simply on account of Fair's greater role in the broader criminal scheme.

Finally, there is nothing to suggest that the trial court made clearly erroneous findings of fact.  McDonald admitted as a part of her guilty plea to engaging in a number of false and fraudulent transactions, without which McDonald and Fair would not have been able to secure the loan at issue in this case.  McDonald cites extensively to the finding of the PSI that "Jackie Fair is the most culpable defendant in this conspiracy," but ultimately the PSI concluded that McDonald's "conduct was instrumental in these offenses," because "without the [her] willingness to sign loan documents claiming her income as $38,000 per month in January 2006, and $60,000 per month later in October 2006, the fraud would not have occurred."  Thus, we must defer to the trial court's finding that McDonald was the "conduit" through which the fraud operated and defer to its judgment that

9

McDonald did not deserve a minor role reduction for the commission of this crime.[1]

Insofar as the trial court did not err in denying McDonald a minor role reduction, neither did it err in denying her a reduction for a minimal role.

## IV.

Finding that the trial court did not plainly err in sentencing, McDonald's sentence is

**AFFIRMED**.

---

[1] McDonald's initial brief argues that the district court "clearly erred by denying a role reduction." The Reply Brief raises for first time an argument that McDonald received a "procedurally unreasonable sentence." "The substantive reasonableness of a sentence is reviewed for abuse of discretion in light of the totality of the circumstances." Daniels, 685 F.3d at 1244-45 (quotation marks omitted). But, "[p]arties must submit all issues on appeal in their initial briefs" or they are waived. United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000). For that reason, we have analyzed McDonald's claims primarily under the standards set forth in De Varon, and not in the two-step framework of the analysis of a procedurally unreasonable sentence. In any event, because we find that the Guidelines range was not miscalculated, we find no procedural error, nor is there anything in the record to suggest her 15-month sentence was substantively unreasonable.