[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10894
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cr-00046-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWIN C. MITCHELL,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 2, 2015)

Before ED CARNES, Chief Judge, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Edwin Mitchell appeals his conviction for one count of abusive sexual

conduct, in violation of 18 U.S.C. § 2244(b).  Mitchell contends that his victim's

testimony was incredible as a matter of law and thus there was insufficient evidence to support his conviction.

## I.

Mitchell was indicted on one count of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a)(1), one count of sexual abuse, in violation of 18 U.S.C. § 2242, and one count of abusive sexual contact, in violation of 18 U.S.C. § 2244(b).  Following a jury trial, he was found not guilty on counts one and two and guilty on count three.

To sustain a conviction on count three, the government had to prove, in relevant part, that Mitchell "knowingly engage[d] in sexual conduct with another person without that other person's permission." [1]  18 U.S.C. § 2244(b).  The evidence at trial established, and Mitchell does not dispute, that he engaged in sexual conduct with a female whom we refer to as T.E.B.  The critical question for the jury, then, was whether the sexual conduct was consensual.

T.E.B. was eighteen years old at the time of the events giving rise to these charges; Mitchell was forty-eight.  She testified that she had known Mitchell since she was a young child, even living with him for a brief period while he helped her

---

[1] 18 U.S.C. § 2244(b) also requires that the sexual contact occur "in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency."  It is undisputed that the sexual contact at issue in this case occurred at the Navy Gateway Inn and Suites at Naval Air Station Pensacola, within the territorial jurisdiction of the United States.

prepare for a military entrance exam.[2]  She also testified that Mitchell had never done anything to harm her before the night in question.

T.E.B. stated that she willingly accompanied Mitchell from Atlanta, Georgia to Pensacola, Florida on the afternoon of December 15, 2012 after Mitchell asked her if she wanted to "make some money."  When asked whether she knew what Mitchell wanted her to do in exchange for the money, T.E.B. answered "[n]o." T.E.B. was surprised to discover that the Navy base hotel room where she was staying with Mitchell had only one bed.  When she asked about sleeping arrangements, Mitchell told her that she could take the bed and he would sleep on the floor.  Mitchell then mixed alcoholic drinks for both of them; T.E.B. did not want her drink and poured it out.  Mitchell and T.E.B. left the hotel and drove to Pensacola Beach, where they spent the evening walking on the boardwalk.

Back at the hotel room later that night, Mitchell took a shower alone and then instructed T.E.B. to do the same.  She told him that she had taken a shower earlier in the day and did not need one, but he insisted.  When she finished showering and came out of the bathroom fully clothed, he told her to "come here," took her clothes off, blindfolded her, and tied her up with "Velcro-sounding thing[s] on [her] legs and [her] wrists."  Mitchell penetrated her with multiple objects, including "a vibrator."  T.E.B. testified that she asked him to stop and

---

[2] T.E.B.'s grandmother testified at trial that she had an intimate relationship with Mitchell when T.E.B. was a child, which is how T.E.B. came to know him.

attempted to pull away from him, but he did not stop. At some point she started to bleed and Mitchell asked her what was wrong. T.E.B. testified: "I told him I didn't like it, that it hurted [sic]." Mitchell told her to take another shower.

After the shower, Mitchell asked her if she was okay. T.E.B. testified that she said "No. I don't want to do this." Mitchell then blindfolded, restrained, and penetrated her with a different sex toy. T.E.B. told Mitchell that he was hurting her and to stop. She tried to move away from him and cried from the pain. But Mitchell did not stop until she started bleeding again.

Following the encounter, Mitchell fell asleep and T.E.B. began texting her boyfriend and best friend. T.E.B. asked them to call her mother and to explain that she had been "raped by a man named Mitch." T.E.B. locked herself in the bathroom, tried to call family members, and continued texting.[3] Her mother called the police and an officer was dispatched to the scene.

The officer testified at trial that when he questioned Mitchell at the hotel room, he admitted to the sexual encounter with T.E.B. The officer asked Mitchell if T.E.B. had told him "no that she didn't want that" at any point during the encounter, and Mitchell replied, "[w]ell, kind of, she said no somewhat." Mitchell

---

[3] Those text messages, which were authenticated and introduced into evidence, include statements from T.E.B. such as "I was just raped," "I'm scared," "my stomach hurts im [sic] bleeding," and "I want to leave."

told the officer that he was not sure what it was that T.E.B. did not want and he continued with sexual contact.[4]

The government introduced additional testimony from two other law enforcement officers who worked at the scene and obtained statements from Mitchell and T.E.B., the emergency room doctor who examined and treated T.E.B., the front desk supervisor from the hotel where the incident occurred, T.E.B.'s grandmother, and T.E.B.'s mother.

After the government rested, Mitchell moved for a judgment of acquittal and argued that, based on inconsistencies in T.E.B.'s testimony, no reasonable jury could find Mitchell guilty. Mitchell's attorney focused her argument primarily on counts one and two, asserting that there was insufficient evidence of physical force or fear to send those two charges to the jury. She acknowledged, however, that with respect to count three, "there may exist some question . . . whether there was any type of impermissible conduct." The district court denied the motion for acquittal and observed that this was "a classic case of credibility" to be decided by a jury.

In his defense, Mitchell presented testimony from his girlfriend and one of his sons regarding his good character. He then rested. After closing arguments

---

[4] Once Mitchell admitted this, the officer stopped questioning him and radioed Naval Criminal Investigative Services ("NCIS"). The NCIS agent in charge of the investigation took the stand at trial and testified that Mitchell told him that he had traveled to Pensacola with T.E.B. and "offered her $100 to let him tie her up and use some sex toys on her." Mitchell said that T.E.B. had agreed to the offer and that when she had asked him to stop, he had stopped.

and instructions, the jury returned a verdict of not guilty on counts one and two and guilty on count three.

After trial and before sentencing, Mitchell moved for a judgment of acquittal on count three. In an order denying the motion, the court wrote:

> As stated at trial . . . this was a classic case of credibility to be decided by the jury. [T.E.B.] testified that she asked the Defendant to stop the sexual contact, and he did not stop; she said he did not stop until she was bleeding. The witness's credibility was explored thoroughly on cross-examination, and the Court fully instructed the jury regarding the duty to make credibility determinations. In sum, the jury was free to believe or disregard [T.E.B.'s] testimony on the issue of whether the sexual contact was against her will, and the jury chose to credit it. There is no basis for disturbing that determination, and the Court finds that the evidence construed in the light most favorable to the Government, is sufficient for the jury to have found that the Government proved each element of the offense charged in Count Three beyond a reasonable doubt.

Nonetheless, at Mitchell's sentence hearing, the court said that it "had serious concerns about [T.E.B.'s] credibility" and it thought "the jury did as well." The court pointed out that T.E.B. could not explain the purpose of the trip to Florida (specifically, what she was to give in exchange for money), that she knew the hotel room had only one bed when she returned to it with Mitchell on the night in question, and that she came across at trial as "street-smart and wise" instead of "vulnerable." However, according to the court, "[T.E.B.'s] testimony certainly did reflect that later on in the evening she told him she didn't want [the sexual contact] anymore, and that's when it should have stopped." The court stated that the guilty

6

verdict on count three "reflect[ed] the jury's concern in that regard." After considering Mitchell's background and the other sentencing factors, the court imposed a sentence of five years probation.

This is Mitchell's appeal.

II.

We review de novo both a denial of a motion for judgment of acquittal and the sufficiency of the evidence to sustain a conviction. United States v. Keen, 676 F.3d 981, 989 (11th Cir. 2012). "[W]e view the evidence in the light most favorable to the prosecution and draw all reasonable inferences and credibility choices in favor of the jury verdict." United States v. Joseph, 709 F.3d 1082, 1093 (11th Cir. 2013).

Mitchell's sole contention on appeal is that T.E.B.'s testimony was "incredible as a matter of law" and thus the evidence was insufficient to support his conviction. In support of that contention, Mitchell quotes extensively from the district court's statements at his sentence hearing expressing doubts about T.E.B.'s credibility.

As Mitchell acknowledges, credibility determinations are for the jury, not for the court. See United States v. Chancey, 715 F.2d 543, 546 (11th Cir. 1983). It is for that reason that this Court will not upset credibility determinations except in the very rare instances where the testimony credited by the jury "is so inherently

incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt." Id. We have also said that "[t]estimony is incredible as a matter of law only if it concerns facts that the witness 'physically could not have possibly observed or events that could not have occurred under the laws of nature.'" United States v. Isaacson, 752 F.3d 1291, 1304 (11th Cir. 2014) (quoting United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997)). Here, T.E.B.'s testimony did not describe anything that is contrary to the teachings of basic human experience, defies the laws of nature, or — in the simplest possible terms — could not have happened. It was not, therefore, incredible as a matter of law.

The court's comments about T.E.B.'s lack of credibility at Mitchell's sentence hearing do not alter our analysis. Those comments, properly read, are in fact consistent with the court's finding that there was sufficient evidence to convict Mitchell on count three for abusive sexual contact. As the government points out, the comments in question were not made in reference to the guilty verdict on count three; instead, they were made in reference to the not guilty verdicts on counts one and two and in the context of justifying a downward departure from the sentencing guidelines. Notwithstanding the court's clearly articulated doubts about parts of T.E.B.'s testimony (doubts that notably did not rise to the level of incredible as a

8

matter of law), the court also remarked, in regard to count three, that "[T.E.B.'s] testimony certainly did reflect that later on in the evening she told him she didn't want [the sexual contact] anymore, and that's when it should have stopped."[5]  We agree with the district court that the guilty verdict on count three likely reflected that, and we find no reason to upset the credibility determinations central to that verdict.

**AFFIRMED.**

---

[5] Mitchell's opening brief repeatedly states that the court "cherry-pick[ed]" credible testimony from T.E.B.'s mostly non-credible testimony to find that the evidence was sufficient to convict Mitchell.  Even if that were true, it would not amount to reversible error.  It is well established that a jury may believe a witness's testimony in whole or in part.  Digsby v. McNeil, 627 F.3d 823, 832 (11th Cir. 2010).